NEW ENGLAND STRUCTURAL COMPANY *vs.* EVERETT
DISTILLING COMPANY.

Middlesex.   March 16, 17, 1905. — September 11, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Deed.   Easement.   Way.   Estoppel.*

A deed of land referring to a plan, bounding the land conveyed on a private street
shown on the plan, operates by estoppel to convey a right of way over the street
as shown on the plan, not only as to the part of the street on which the land
abuts but also over the rest of the street so far as the grantor has the power to
create such a right.

A boundary of land described in a deed as running to the "middle line" of a cer-
tain private street, and thence along this line, is sufficient to transfer to the
grantee all rights of way in the street which the grantor had.

Encroachments upon a private street by fences and buildings erected by one having
a right of way therein, do not as matter of law show an intention to abandon
the right of way over the rest of the street, but merely are to be considered
with other evidence upon the question whether the person making the encroach-
ments intended to abandon the right of way.

PETITION filed September 8, 1902, in the Court of Land
Registration, now the Land Court, for the registration of the
title to a parcel of land in Everett, including all the land which
is shown upon the plan called "Exhibit A," printed on page
146, lying between the railroad, Second Street, Locust Street,
the water and land marked as belonging to the New England
Gas and Coke Company, except the parcel marked "Everett
Distilling Company."

The respondent, owning the excepted parcel, answered
claiming:

(1) an easement in its favor over the strip of land shown
as Front Street on Exhibit A throughout its entire length and
over connecting ways shown on a plan by J. H. Shearer, dated
March, 1850, and called "Exhibit C," printed on page 147;

(2) an easement in a strip twenty feet wide along the
northerly side of the respondent's premises;

(3) a right to drain through a part of the petitioner's land
to Island End River.

At the trial before *Davis*, J. the second and third claims were allowed.   On the first claim, the judge found and ruled as matter of law that no right of way existed in favor of the respondent

over Front Street, and at the request of the parties reported the case for determination by this court.

The respondent at the argument waived any claim to an easement in Front Street west of the westerly line of its premises.

The following statement of the facts necessary for a determination of the question at issue, as set forth in the report, is taken

EXHIBIT C.

PLAN OF AN ESTATE
IN MALDEN
BELONGING TO
WILLARD SEARS
J. H. Shearer, Eng.
March 27-1850

from the respondent's brief, referred to in the second paragraph of the opinion as stating clearly the case of the respondent:

In 1845 Nathaniel Sands acquired by deed from Dorcas Nichols a large tract of marsh land in Malden and Chelsea, apparently including all of the land on both sides of Front

Street shown on the plan Exhibit C, except lots 95 and 93, which then belonged to John Rayner and others, and the land west of the factory lot, which was conveyed to Sands in 1846. Sands mortgaged back to Dorcas Nichols, and from time to time thereafter she executed partial releases.   These releases included the factory lot, the boarding house lots, and a parcel immediately west of the boarding house lots with a frontage of one hundred feet on Front Street, the latter parcel comprising the greater part of the respondent's present premises.

As to the remaining property this mortgage was foreclosed by entry made on September 18, 1847, and the property was, as soon as the foreclosure was perfected, conveyed to the owners of the equity of redemption.

Sands conveyed to the Boston and Chelsea Iron and Screw Company, hereinafter called the Screw Company, all the land abutting on Front Street east of the west line of the factory lot, except lots 95 and 93.   The Screw Company mortgaged the land shown on Exhibit C as the " Boarding House Lots " in two parcels ; both mortgages were foreclosed by possession taken in 1847, and under the foreclosures the petitioner derived its title.

The title of the Screw Company in all the land conveyed to it except the boarding house lots passed by mesne conveyances to Willard Sears.   On January 1, 1850, title to the land on the south side of Front Street east of the wharf lot was in Willard Sears ; title to the land on the north side between the factory lot and the boarding house lots stood in the name of one Fletcher, who reconveyed to Sears by deed dated March 19 and recorded March 21, 1850.

By indenture dated January 1, 1850, acknowledged March 26, 1850, and recorded May 21, 1850, between Sears and the owners of lots 95 and 93, the latter conveyed to the former a parcel of land shown on Exhibit C, bounded by the " Town and County Line," a broken line a little north of Auburn Street, another broken line nearly at right angles, and the middle line of Front Street extended to its intersection with the extension of a line midway between Auburn Street and Second Street, and by the last named line and extension.   This parcel was described as bounding on the middle line of Front Street.   The petitioner derived title to lots 95 and 93 from the grantors of this parcel.

By mesne conveyances the title to all the land abutting on Front Street east of the factory lot, subsequently, in 1850, became vested in the Atlantic Wharf Company. The Atlantic Wharf Company, in 1857, conveyed lot 4, shown on Exhibit E, printed below, to Nathaniel G. Upham, describing the premises by reference to the plan as "Lot 4 between Second and Front Streets and bounded on both of said streets." The petitioner derived title to the land on the southerly side of Front Street under a subsequent conveyance from the Atlantic Wharf Company.

Upham died seised of lot 4. By mesne conveyances the title to lot 4 passed to the Union Stone Company in 1872. That

EXHIBIT E.
LANDS OF THE
ATLANTIC WHARF CO.
November, 1856

corporation, in 1885, conveyed the premises now owned by the respondent to Charles W. Howland, under whom the respondent derived title.

When the Union Stone Company acquired title to lot 4 in 1872, a way existed west from Locust Street to and a little beyond the respondent's present premises over the strip of land marked Front Street. After passing the respondent's present premises the way was obstructed by buildings, apparently old. Upon acquiring title to lot 4 the Union Stone Company built a fence in the middle of Front Street as far east as the west line

of the respondent's present premises and thence running north-erly, and a fence running southerly along the easterly line of the wharf lot, and in the small piece of Front Street east of the factory lot thus enclosed placed a small building. Front Street east from this obstruction to Locust Street continued to be used to some extent by the Union Stone Company and its successor in title and by other abutting owners.

In 1897 Joyce, Curran and Walsh, then the owners of the respondent's premises, extended one of their buildings nearly to the centre line of Front Street, apparently with the petitioner's acquiescence.

In 1899 the petitioner erected a substantial brick building across Front Street between the respondent's premises and Locust Street, but the respondent's land then was owned by a partnership of which the affairs were in confusion and the prop-erty in the hands of a receiver, and the erection was under such circumstances that the judge found that no estoppel resulted from failure to object. The respondent acquired title in August, 1901, and in January, 1902, made objection to the obstruction of Front Street.

The judge found as matter of law and ruled that the respond-ent had no right of way over any part of Front Street, on the ground that the easement had been extinguished by the acts of the Union Stone Company and of Joyce, Curran and Walsh above set forth.

The following abstract shows the essential facts as to the title of the property:

The Atlantic Wharf Company, owning lots 3 and 4, conveyed lot 4 in 1857 to Nathaniel G. Upham, who died seised and in-testate; his heirs conveyed lot 4 in 1871 to William Munroe, who conveyed lot 4 in 1872 to the Union Stone Company, which, owning also the factory and wharf lots, conveyed the land now of the respondent in 1885 to Charles W. Howland, who conveyed in 1896 to John Joyce, Maurice J. Curran and John R. Walsh, partners, who with the receiver of the partner-ship conveyed in 1900 to one Murphy who conveyed in 1901 to the Everett Distilling Company, the respondent.

Lot 3 passed from the Atlantic Wharf Company subsequently to the conveyance of lot 4, and by mesne conveyances the title

to it vested in the petitioner. It never was owned by the Union Stone Company.

Lots 95 and 93 and the boarding house lots never were owned by the Atlantic Wharf Company or by the Union Stone Company.

*W. H. Dunbar*, for the respondent.

*A. A. Folsom*, (*A. K. Cohen* with him,) for the petitioner.

HAMMOND, J. The judge "ruled and found as matter of law" that upon the facts stated in the report the respondent had no right of way over any portion of the petitioner's land formerly called Front Street. We understand this to be a ruling on the question as one of law, and not a finding of fact. At the argument before us the respondent waived any claim to any easement in Front Street west of the westerly line of its premises, but contended that it has a right of way over that part of Front Street which extends from said westerly line easterly to Locust Street. The only question, therefore, is whether as to this part of the strip of land called Front Street (which for the sake of brevity will be called the easterly part) the ruling was correct.

The report contains a detailed statement of the conveyances affecting the lands in question, made during the last three quarters of a century, and at first sight the facts seem somewhat complicated, but the case of the respondent has been so clearly and logically set forth in its brief that the task of decision has been greatly lightened.

In 1857, the Atlantic Wharf Company conveyed to one Upham lot 4 on the plan known in this case as Exhibit E. The deed described the land by reference to this plan as "Lot 4 between Second and Front Streets and bounded on both of said streets." Upon the plan Front Street is shown as extending from Locust Street westerly to a point some distance west of the present westerly line of the respondent's land. Lot 4, of which the respondent's land is a part, is upon the north side of Front Street. Since the lot was bounded on this street there was created in favor of it a right of way over the street as shown on the plan, not only as to that part against which the lot abutted but also over the rest of the street so far as the grantor had power to create such a right. And that is so even if the grantor had not the power to create

the right over the whole of the street.  The deed is operative by estoppel to create the easement so far as the grantor's title will support it.  Such a way is not a way by necessity, and the right exists even if there be other ways either public or private leading to the land.  *O'Linda* v. *Lothrop,* 21 Pick. 292.  *Rodgers* v. *Parker,* 9 Gray, 445.  *Stetson* v. *Dow,* 16 Gray, 372.  *Crowell* v. *Beverly,* 134 Mass. 98.  *Howe* v. *Alger,* 4 Allen, 206, and cases therein cited.  *Driscoll* v. *Smith,* 184 Mass. 221.

It becomes necessary therefore to look into the nature and extent of the interest which at the time of this deed the grantor, the Atlantic Wharf Company, had in Front Street.  It acquired by the deed from Sears, Coe and Upham the fee in the south half of the street from Locust Street to the east line of the respondent's land, and in the whole width of the street so far as it abutted upon this land.  To this extent therefore the deed gave as against the grantor and its assigns a right of way appurtenant to the respondent's land over Front Street to Locust Street.  As to the northerly half of the street extending from the easterly line of the respondent's land to Locust Street, the respondent contends that it has a right of way by reason of other conveyances mentioned in the report, but the facts bearing upon this contention are somewhat meagrely set forth in the report, and, as the case must go back to the trial court and this question may become immaterial at the second hearing by reason of the finding of the court upon the question of abandonment or otherwise, it is not necessary now to pass upon it.  The court which finally passes upon it should have a copy of the detailed description in the releases which were given by Mrs. Norris of the boarding house lots and the lot immediately adjoining upon the west, so that it may be seen whether or not the releases extend to the centre of Front Street; and should have also a more detailed statement of the transaction concerning the indenture between Sears and the owners of the Rayner lots.

Whatever may be the case as to this part of Front Street, it is clear, as stated above, that in any event the Atlantic Wharf Company had power to grant the easement in the southerly half and part of the northerly half of Front Street, and its deed to Upham had that effect.  Front Street as shown upon the plan is forty feet wide.  The right of way therefore extended

over a strip of land at least twenty feet wide leading to Locust Street.

The mesne conveyances by which Upham's title in the premises of the respondent was acquired by the latter were all apt and sufficient to carry any easement that Upham had acquired in Front Street. In 1871 his heirs conveyed the whole of lot 4 to Munroe, who conveyed it in 1872 to the Union Stone Company. In 1885 this latter company carved out of lot 4 and conveyed to Charles W. Howland the land now owned by the respondent. The parcel is irregular in shape. The boundaries in the deed so far as material are as follows: " thence running southwesterly on said land of said Union Stone Company 162.60 feet to the middle line of Front Street; thence running southeasterly on said middle line of Front Street 107.50 feet; thence running northeasterly . . . to said Second Street. . . . Being Lot A on plan of land," etc. Upon the plan no sign of Front Street is shown. The passageway named in the deed is upon the other side of the parcel, and leads to Second Street. This passageway is shown upon the plan and is marked "Passageway." It is contended by the petitioner that since the land conveyed is not described as bounding "on" Front Street, but as running to the "middle line" and thence along this line, the rules relating to the creation of easements in streets are not applicable ; but there is nothing in this contention. The language of the deed was sufficient to create an easement and therefore to transfer one, and by it the grantee Howland acquired the right of way made appurtenant to this parcel as a part of lot 4 by the deed from the Atlantic Wharf Company to Upham. In 1896 Howland conveyed to Joyce and others, whose title was conveyed to Murphy, who conveyed to the respondent. Each of these last three deeds contained language apt to transfer the easement if it existed. The respondent's record title to the easement in Front Street, to the extent above described, is thus made clear.

The only question remaining is whether the easement has been extinguished by any acts *in pais*, no extinguishment by any written instrument of record being alleged. The easement having been acquired by grant could not be lost by mere non-user. *Butterfield* v. *Reed*, 160 Mass. 361, and cases therein cited.

The contention of the petitioner is that it has been lost by abandonment. Even if it be assumed that before the Union Stone Company received the deed of lot 4 there had been an abandonment of the easement over the part of Front Street west of the respondent's land, it by no means follows that the right over the rest of the street was abandoned. It appears that the Union Stone Company, before 1885, erected in Front Street, west of the respondent's present premises, a building and a fence closing the street. The effect was to enclose the northerly half of the street abutting on a small part of lot 4, leaving unobstructed the way from that point, which was westerly of the respondent's land, to Locust Street. It cannot be said as matter of law that these acts conclusively show an intention to abandon the way over the easterly part of Front Street, especially when it appears, as the report discloses, that this corporation and its successors in title continued to use this part of the street.

We are of opinion further that the erection of the building by Joyce, Curran and Walsh, the respondent's predecessors in title, over that part of Front Street in which they owned the fee, was not as matter of law an abandonment of their easement over the rest of the easterly part of Front Street. Abandonment is a question of intent. In some cases, where acts of the owner of the dominant estate have seemed to be entirely inconsistent with an intention to make any further use of the easement, especially where a change in circumstances has rendered the easement no longer of any benefit, such acts have been regarded as showing conclusively as matter of law an intention to abandon, and the consequent extinguishment of the easement. *Corning* v. *Gould*, 16 Wend. 531. *Canny* v. *Andrews*, 123 Mass. 155. *Dillman* v. *Hoffman*, 38 Wis. 559. Since abandonment however is a question of intent, any act relied upon either must be accompanied by evidence of intention, or be in its nature such as necessarily to show an intention, to abandon. As a rule mere encroachments upon a common right of way do not of themselves necessarily show an intention to abandon the way, and in most of such cases the question of abandonment is one of fact and not of law. In *King* v. *Murphy*, 140 Mass. 254, the general rule is thus stated by Morton, C. J.: " Mere non-user, even for twenty years, will not conclusively show an abandonment of a

right of way; but when the owner of the dominant estate, to which a right of way over a servient estate is appurtenant, does some acts inconsistent with the continued existence of the way, with the intention to abandon and extinguish his easement, it operates as a present abandonment; and it is a question for the jury to determine whether such intention existed."

We are of opinion that the encroachments made on Front Street west of the petitioner's land, or in front of this land, do not show as matter of law an intention to abandon the right of way over the rest of the street. These acts, taken in connection with other facts, such for instance as the creation by the deed from the Union Stone Company to Howland of a right of way over a strip of land adjoining the respondent's premises on the northeast to Second Street, and with any other competent evidence, are to be considered as bearing upon the question whether in fact there was an intention to abandon.

In view of the finding of the trial court that the petitioner's building across Front Street was erected under such circumstances that no estoppel was created against the owners of the respondent's land, we cannot say that the respondent is thereby estopped from asserting its right of way.

The ruling of the trial court that upon the facts stated in the report, as matter of law, the respondent has no right of way over any portion of Front Street was erroneous, and the order directing a decree for the petitioner should be revoked. The case is to stand for further hearing only upon the questions whether the respondent has a right of way over any portion of Front Street between the westerly line of its land and Locust Street, and if so, over what portion; and it is

*So ordered.*