ROSE T. MURPHY *vs.* MART REALTY OF BROCKTON, INC.
SAME *vs.* FRANCES M. PACIFICO, trustee.

Plymouth. November 5, 1964. — March 8, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Way,* Private: creation, extent, construction, as boundary, fee of way.
*Easement. Deed,* Construction, Property conveyed.

Where owners of lots and of an abutting unwrought and impassable strip appearing as a proposed street on a recorded plan conveyed the lots by deeds describing them as bounded by the proposed street shown on the plan, the grantees and through them their successors in title acquired also an easement, appurtenant to the lots, to travel over the strip. [677–678]

One having an easement of travel over a way appurtenant only to lots abutting the way and forming a small part of an area owned by him, on other parts of which were located a store and its parking space, overloaded the easement through travel over the way by persons going to and from the store and parking space, even if in so doing they passed over the abutting lots. [678–679]

The circumstances of deeds by the owners of an unwrought proposed street and abutting lots, conveying the lots and describing them as bounded by the proposed street, did not preclude application to the deeds of the usual presumption that a deed of land described as bounded by a way owned by the grantor conveys the fee to the middle of the way. [679–681]

Two BILLS IN EQUITY filed in the Superior Court on September 24, 1962, and October 11, 1962, respectively.

The defendants appealed from final decrees entered after hearing by *Dewing, J.*

*James D. St. Clair* for the defendants.
*Harry J. O'Sullivan* for the plaintiff.

SPALDING, J. These are two bills in equity. One is against Mart Realty of Brockton, Inc. (Mart), and the other is against Frances M. Pacifico (trustee), as trustee of Mart Realty Trust. The bills seek to enjoin the defendants from trespassing upon a 50 foot strip of land (strip) which borders the plaintiff's and trustee's property. The bills also seek a mandatory injunction for the removal of blacktop and fill on the strip. The judge made findings of material facts. The evidence is reported.

The pertinent facts are these. The strip is a proposed street which appeared on a plan recorded by the plaintiff's husband in 1951. The plan shows a proposed street fifty feet wide and 205 feet long running north from Crescent Street. The plaintiff's property, lots 4 and 5, borders the entire length of the strip on its westerly side. The defendant trustee's land, lots 1, 2 and 3, borders the entire length of the strip on its easterly boundary. Lots 1 and 5 abut Crescent Street. Originally, the trustee's property was owned by the plaintiff and her husband. The trustee acquired title by means of the following conveyances: In 1952 the plaintiff and her husband conveyed lot 1 to Robert O. Chick and his wife (Chicks). Thereafter, the Chicks conveyed the land to Fernandes Realty Corporation (Fernandes). Both deeds described the property as being bounded westerly by the proposed street as shown on the plan. In 1958, the plaintiff (now the sole owner of the property, her husband having died) conveyed lots 2 and 3 to Fernandes. In that deed, these lots were described as bounded "Westerly by a proposed Street shown on said plan . . . ."[1] Fernandes also owned land north of lot 3. By a deed dated October 1, 1959, Fernandes conveyed various parcels of land including lots 1, 2 and 3 to the Brockton-East Shopping Plaza, Inc. (Brockton-East). The westerly boundary of lots 1, 2 and 3 was described in the same manner as in the earlier deeds, that is, as bounded on the proposed street shown on the plan. On March 17, 1960, Brock-

---

[1] The plan referred to in these conveyances was the plan described above, which had been recorded by the plaintiff's husband in 1951.

ton-East reconveyed the land to Fernandes, and on the same day Fernandes conveyed it back again to Brockton-East. This was done to remove a restriction on the record. Finally, on December 28, 1961, Brockton-East conveyed the property to the trustee. At the present time the land and buildings owned by the trustee are occupied by Mart under a lease, and are used for a discount store known as "Mammoth Mart."

The strip was stony and rocky. On it were trees and tree stumps, shrubs and rose briars; it was not passable by vehicle or by foot, and was not staked out. The strip remained undeveloped until sometime after the plaintiff sold the lots. Subsequent to these sales, the trustee caused the strip to be filled, graded and blacktopped. In the course of construction, a "curb cut" was applied for and granted by the city of Brockton. The city removed the edgestone and sidewalk from the part of Crescent Street which bordered the strip. The strip is now being used for vehicular and pedestrian passage to and from the Mammoth Mart.

The judge concluded that the defendants had no easement of way over the strip and no ownership in the soil of any portion of it. He ordered decrees to be entered enjoining them from using the strip; the decrees further ordered them to restore the strip to its former condition. From decrees in accordance with this order the defendants appealed.

The trustee contends that she and her lessee, Mart, have an easement of way over the strip. The trustee also asserts that the fee to the easterly half of the strip is not in the plaintiff and has not been owned by her since the conveyances to the Chicks and Fernandes.

1. The defendants invoke the familiar rule that "when a grantor conveys land bounded on a street or way, he and those claiming under him are estopped to deny the existence of such street or way, and the right thus acquired by the grantee (an easement of way) is not only coextensive with the land conveyed, but embraces the entire length of the way, as it is then laid out or clearly indicated and pre-

scribed." *Casella* v. *Sneierson,* 325 Mass. 85, 89, and cases cited. This rule is applicable even if the way is not yet in existence, so long as it is contemplated and sufficiently designated. *Tufts* v. *Charlestown,* 2 Gray, 271, 273. *Ralph* v. *Clifford,* 224 Mass. 58, 60. *Casella* v. *Sneierson,* 325 Mass. 85, 90. *Olson* v. *Arruda,* 328 Mass. 363. This principle of estoppel "seems to have become a rule of law rather than a mere canon of construction." *Teal* v. *Jagielo,* 327 Mass. 156, 158.

In determining whether the strip has been sufficiently defined as a proposed street, reference may be made to the plan filed by the plaintiff's husband. "A plan referred to in a deed becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed." *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.* 254 Mass. 350, 354. *Goldstein* v. *Beal,* 317 Mass. 750, 755. Here the proposed street was adequately designated in the plan. We are of opinion, therefore, that the deeds to the Chicks and Fernandes created an easement of way in the strip which bounded the land granted (lots 1, 2 and 3). The grantor is estopped as against the Chicks and Fernandes and their grantees from denying the existence of such easement over the grantor's land within the limits of the way. Once the easement was created it passed to succeeding grantees by virtue of G. L. c. 183, § 15,[1] whether or not it was mentioned in the deeds.

The judge thus erred in ruling that the defendants had no easement of way over the proposed street indicated on the plan. But where a right of way, as here, is created by estoppel, it must be appurtenant to the land conveyed. In other words, it is not an easement in gross. A right of way appurtenant to the land conveyed cannot be used by the owner of the dominant tenement to pass to or from other land adjacent to or beyond that to which the easement

---

[1] So far as here pertinent, § 15 reads, "In a conveyance of real estate all . . . easements . . . belonging to the granted estate shall be included in the conveyance, unless the contrary shall be stated in the deed, and it shall be unnecessary to enumerate or mention them either generally or specifically."

is appurtenant. *Stearns* v. *Mullen,* 4 Gray, 151. *Smith* v. *Porter,* 10 Gray, 66. *Randall* v. *Grant,* 210 Mass. 302. *Ball* v. *Allen,* 216 Mass. 469, 474. *Cooley* v. *Boston & Maine R.R.* 303 Mass. 371, 374–375.

The evidence reveals that lots 1, 2 and 3 are but a small portion of the land comprising the area on which Mart's discount store and parking area are located. Actually neither the store itself nor the parking area used in conjunction with it is within the boundaries of lots 1, 2 and 3. Thus, in using the way to pass to and from the store, the defendants have overloaded the easement. And this would be none the less true even if those using the way came onto it by passing through lots 1, 2 and 3. In *Davenport* v. *Lamson,* 21 Pick. 72, it was held that a defendant, who had a right of way appurtenant to a three acre lot, could not use it as a right of way to and from an adjoining nine acre lot, despite the fact that in using the way he passed through the three acre lot.

Because of the judge's ruling in the present cases that the defendants had no easement of way over the strip, he never reached the issue of whether the filling in, grading and blacktopping of the strip was proper. In *Guillet* v. *Livernois,* 297 Mass. 337, 340, the defendant acquired an easement over a proposed street which was at the time impassable. He raised the level of the street, and removed turf and a retaining wall which the plaintiff had constructed within the boundaries of the proposed street. It was held, after full discussion and citation of authorities, that the defendant had a right to make the street "passable and usable for its entire width, having *due regard to the rights and interests of others*" (emphasis supplied). We are unable to say on this record whether the alterations and improvements made to the strip by the defendants were reasonable. The cases, therefore, unless the parties can agree, must be remanded for further findings on this issue.

2. The question of whether the plaintiff conveyed a fee to the middle of the strip remains. The judge ruled that she had not. As a general rule of construction ". . . the

mention of a way as a boundary in a conveyance of land is presumed to mean the middle of the way, if the way belongs to the grantor.'' *Crocker* v. *Cotting,* 166 Mass. 183, 185. *Erickson* v. *Ames,* 264 Mass. 436, 443. *Daviau* v. *Betourney,* 325 Mass. 1. This rule also applies where a private way is given as a boundary, *Gray* v. *Kelley,* 194 Mass. 533, and where the way is only contemplated. See *Lemay* v. *Furtado,* 182 Mass. 280. But, the basic question remains one of ascertaining the intent of the parties as manifested by the written instrument and the attendant circumstances. *Erickson* v. *Ames,* 264 Mass. 436, 444. *Suburban Land Co. Inc.* v. *Billerica,* 314 Mass. 184, 189–190. Compare the more restrictive language used in *Gray* v. *Kelley,* 194 Mass. 533, 537.

The presumption which must be overcome, however, is a strong one. In *Lemay* v. *Furtado,* 182 Mass. 280, the plaintiff attempted to take the case out of the usual rule by relying on special facts. One of the boundaries was given as four rods, a distance which was not sufficient to take the land to the strip in question. At the time of the conveyance, the way had not been laid out; a ditch, wall and gully rendered the strip unsuitable for passage. The way was not necessary for the grantee or defendant. During the period of time in which the grantee held the land, nothing was done to develop the strip. Subsequent acts of the parties, including the cutting of hay and the payment of taxes, indicated that they thought a fee only to the side of the way had been conveyed. These facts, in the court's opinion, did not overcome the usual presumption that a fee to the middle of the tract had been conveyed.

Here, the plaintiff's case, even when the evidence is considered in its most favorable aspect, is no stronger than that presented in the *Lemay* case. She relies on the undeveloped nature of the street; the area of lots 1, 2 and 3; the absence of a reference to the strip in some of the instruments in the trustee's chain of title; and the length of the Crescent Street frontage given in plans of land owned by Brockton-East which did not take the land to the center of

the strip. The plaintiff, who testified that she did not intend to convey a fee to the center of the strip, has continued to pay taxes on the property. But, the subsequent unilateral action of one of the parties in paying taxes should be given little weight in construing the consequences of an earlier bilateral transaction, as was expressly recognized in the *Lemay* case.

As in the *Lemay* case, these facts, without more, are insufficient to overcome the usual presumption. The trustee, therefore, has a fee to the center of the "proposed street."

3. The final decrees are reversed. When new decrees are entered they shall provide that the defendants are entitled to use the proposed street described in the plan, but only for the purpose of going to and from lots 1, 2 and 3, and that they are not to use the way in order to go to or from other property. Paragraphs 1 and 2 of the original decrees, which define the plaintiff's boundaries and provide that the defendants have no ownership in the fee of the proposed street, shall be modified before being incorporated in the new decrees. The decrees shall provide that the trustee owns the fee to the middle of the strip. The cases, unless the parties can agree, shall stand for further hearing on the issue of whether the steps taken by the defendants to make the way usable were done with due regard for the rights of the plaintiff.

*So ordered.*