CANTON HIGHLANDS, INC. & another[1] *vs.* FRANCIS A. SEARLE, JR., & others.[2]

Suffolk.  December 12, 1979. — January 14, 1980.

Present: BROWN, GREANEY, & PERRETTA, JJ.

*Real Property,* Easement, Registered land. *Easement.*

Where a certificate of title to certain property contained an express grant of an easement over a way by reference to a plan delineating the length and breadth of the easement, there was no ambiguity in the grant necessitating resort to extrinsic evidence to identify the scope of the easement even though the way had never been constructed on the ground and the grantees had other means of access along constructed ways to public streets. [51-53]

---

[1] Helen A. Cohen.

[2] Michael J. Connolly, Jr., Rosa Connolly, Richard J. Mahoney, Jr., and Eleanor R. Mahoney.

Where a deed contained no language excluding rights over a way shown on a subdivision plan and prior conveyances in the chain of title had been made expressly subject to such rights, the grant included rights in the way by virtue of G. L. c. 183, § 15. [53]

In the circumstances, conveyance of two lots as a single parcel described as bounded by a way shown on a subdivision plan with express rights to use a second way accessible only through the first gave the combined parcel an easement appurtenant over the first way. [53-56]

PETITION filed in the Land Court on March 23, 1978.

The case was heard by *Randall, J.*

*Walter C. Spiegel* for the petitioners.

*Alan R. Hoffman* for the respondents.

GREANEY, J.   By their action the petitioners, Canton Highlands, Inc. (Canton), and Helen A. Cohen, the owners of lots 140 and 143, respectively, in a subdivision of land located in Canton shown on Land Court plan 12219K (the K plan) sought to eliminate rights in a way (called by the parties "way X") which is shown on that plan and which traverses both lots.   The various respondents, the owners of lots 36 (Searle), 37 (the Connollys), and 3 and 11 (the Mahoneys), respectively, in the subdivision, filed answers objecting to the petition and claiming rights in the way. The petitioners appeal from a decision by a Land Court judge who found that the various respondents had rights in way X by express grant, by estoppel, or by implication through reference in a deed to a plan, and who ordered the petition dismissed.   We affirm the decision.

The case was tried on a statement of agreed facts and exhibits and on the testimony of seven witnesses.   From these sources and the judge's memorandum of decision we draw these facts.   The original tract was registered in 1929.   Subdivision of a portion of the tract into house lots occurred in 1938, and way X was created on that subdivision plan.   In 1973, John W. Keith Builders, Inc. (Keith), purchased the remaining unsold lots in the subdivision, together with a substantial portion of adjoining land.   Keith realigned the lots into the configuration shown on the K plan.   That plan shows way X running in an east-west direction and meeting

two other paper ways at its terminal points. These paper ways have access to High Street, a public way. In 1973, Keith also acquired two lots from the petitioner Cohen and her husband in exchange for lots 142 and 143. The Cohens built their home on lot 142. Their title certificate for lot 143 made the parcel expressly subject to way X as shown on the K plan. In January, 1976, Keith conveyed its remaining unsold lots to Canton. Canton's title certificate was also expressly made subject to the right to use the streets and ways shown on the K plan. In September 1976, Canton sold lots 36 and 37 to one Carey. This conveyance was subject to the right to use the streets and ways shown on the K plan in common with others. In May, 1977, Carey sold lot 37 to the respondents, the Connollys. This conveyance granted appurtenant rights to use the streets and ways shown on the K plan. In September, 1977, Carey sold lot 36 to the respondent Searle subject to easements of record in force and applicable. The Mahoneys purchased adjoining lots 3 and 11 as one parcel in 1970. Their title certificate describes the parcel as bounded easterly by one of the paper ways and southerly by way X, grants lot 11 appurtenant rights in a paper way running in a southwesterly direction from High Street (accessible only by use of way X) but makes no reference to the use of any other way. There was evidence that Carey had informed the Connollys and Searle that lots 140 and 143 were subject to an easement which would make it difficult to build on either lot and that in all likelihood those lots would not be developed. There was also evidence that the respondents were accustomed to use way X to traverse lot 143 and for leisure walks, and that on several occasions during the winter months the Connollys and Searle had utilized the way as a necessary means of ingress and egress from their properties. It was stipulated that way X and the two other paper streets have not been constructed on the ground, that four ways named and shown on the K plan had been so constructed, that presently there is material growth, including trees and bushes, over lot 143 and in the area of way X, and that the Canton planning board has never re-

quired bonds or covenants under the Subdivision Control Law for the completion of way X or any of the other paper ways.

1. *Rights of the Connollys.* The rights of these respondents in way X (and the petitioners' correlative burdens) are governed by the language in the Connollys' title certificate, which indicates that the conveyance of lot 37 granted them appurtenant rights in the streets and ways shown on the K plan. The language granting the appurtenant rights carried forward language from previous instruments in the chain of title, which had granted rights in way X first to Canton and then to Carey. Thus, the Connollys possess rights in the way by reason of an express grant referenced to a plan which clearly delineates the length and breadth of the easement. In view of this, the judge properly rejected the petitioners' arguments that the Connollys' grantor did not intend to convey appurtenant rights in way X, and that the conveyance to the Connollys was ambiguous as to its application to way X so as to necessitate the admission of extrinsic evidence to identify the scope of the easement.[3] The judge correctly ruled that the grant was unambiguous in its terms and that the easement granted was precisely formulated on the K plan.

The petitioners' reliance on the decision in *Walter Kassuba Realty Corp.* v. *Akeson,* 359 Mass. 725 (1971), to support their argument that the grant is ambiguous is misplaced. In that case the respondents, the owners of registered land abutting the petitioner's land to the north, claimed rights over paper extensions of ways into the land sought to be registered. The ways in question were partially constructed, and the plans showed basically the registered parcels and the abutting ways without any indication of the extent of

---

[3] Despite ruling that the Connollys and Searle held rights in way X by express grant and that the grant was unambiguous, the judge did admit extrinsic evidence at the trial bearing on the scope of the grants. The evidence was admitted either on the question of the ambiguity of the grants and later rejected when they were found to be unambiguous, or on the question of the extent of the Mahoneys' rights in way X.

the ways. None of the deeds contained an express grant of easement. The court in *Kassuba Realty* was concerned only with an asserted easement by implication, a type of easement which by definition necessitates the use of extrinsic evidence to evaluate the circumstances surrounding its creation and existence. See *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. 350, 354-355 (1926); *Dale* v. *Bedal*, 305 Mass. 102, 103 (1940). The court concluded that because the paper extensions had never been laid out or used and because the respondents had adequate and convenient access apart from the paper ways, the respondents had not established a grant by implication over the extensions.

By contrast, the Connollys' certificate and prior instruments in this case contain clear and specific express grants of easement over way X by reference to a plan which shows the way in its entirety. In these circumstances the ambiguity present in the *Kassuba Realty* case does not exist. The result here is governed in principle by the case of *Dubinsky* v. *Cama*, 261 Mass. 47, 53 (1927), which held that a certificate of title stating that its lot was subject to a right of way referred to and appearing on a specific plan had the effect of creating easements by express grant over the way.

Other arguments by the petitioners designed to postulate an ambiguity as to the easements are equally without merit. The facts that way X has never been constructed on the ground and that the respondents have other means of access along constructed ways to public streets do not create a latent ambiguity in the grant or require its elimination. An unrestricted easement or way by express grant is not limited in duration to the necessities of the estate's owner, and the fact that the owner of the lot has acquired another way out does not permit the inference that the granted easement has been extinguished. *Atlanta Mills* v. *Mason*, 120 Mass. 244, 251 (1876). See Park, Conveyancing § 242, at 275 (1968). Similarly, lack of constant use or obsolescence will not destroy the easement (*Emery* v. *Crowley*, 371 Mass. 489, 495 [1976]) because an express easement can be extinguished

only by grant, release, abandonment, estoppel or prescription. *Ibid.*, and cases cited. Moreover, in this case the way was and is used by certain respondents for emergency access and egress to and from their lots as well as for periodic pleasure walks. Lastly, the fact that way X is drawn on the plan with dotted lines is of little significance in overcoming the effect of the express grants. For all that appears in the record, the use of dotted and solid lines on the plan serves only to distinguish between property lines and other markings and has no bearing upon the definition or scope of the rights of way contained on the K plan.

2. *Rights of Searle.* This respondent's title also derived from the prior conveyances to Canton and Carey which were made expressly subject to rights in way X. His lot borders in part on the way and his deed granted rights in easements of record. All that has been said in part 1 of this opinion pertains as well to Searle's rights in way X. In view of this, and because there is no language in the deed from Carey to Searle excluding rights over way X, the judge correctly ruled that Searle acquired rights in the way by force of the provisions of G. L. c. 183, § 15.[4]

3. *Rights of the Mahoneys.* Lots 3 and 11 are separately designated on the K plan but were conveyed as a single parcel to these respondents in 1970. Their certificate of title describes the combined parcel as bounded on the east by one of the subdivisions' paper ways and on the south by way X. Lot 11, according to the certificate, also has appurtenant express rights to use the entire length of the paper way on the westerly side of the K plan. In determining the rights of the Mahoneys in way X, the judge looked to the circumstances surrounding the 1970 conveyance and reasoned that lot 11 would be landlocked unless there was access over way X at least as far as Trayerwood Drive (a constructed way leading to a public street) or as far as the paper way on the

---

[4] "In a conveyance of real estate all rights, easements, privileges and appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary shall be stated in the deed, and it shall be unnecessary to enumerate or mention them either generally or specifically."

plan's westerly side which connects to a public street. Because the Mahoneys' certificate of title granted express rights appurtenant to lot 11 in the way located on the westerly side of the subdivision, the judge found that the grant of the latter rights would make no sense unless it was contemplated that lot 11 would have access to reach it. As way X provided the access which directly linked lot 11 to the westerly paper way, the judge concluded that there is appurtenant to lot 11 a right of way over the entire length of way X. The judge determined that provisions in the Canton zoning by-law which made lot 11 unusable for a single family residence absent specific zoning relief[5] were not significant because, in his opinion, lot 11 might be capable of a separate legal existence and might need separate access to a public way whether held together with lot 3 or alone.[6]

The judge's reasons are basically sound. There are other independent principles that also support his ultimate conclusion that the Mahoneys have appurtenant rights along the entire length of way X. Because the Mahoneys' parcel is now descriptively bounded by way X, there have been created by rights of estoppel against their grantor and those claiming under that grantor rights appurtenant to the com-

---

[5] Lots 3 and 11 contain approximately 8,250 square feet each. A residence is located on lot 3. All the lots in question are in a single family residence zone. In 1958, the Canton zoning by-law was amended to increase the lot area requirements for construction of single family dwellings from 7,500 square feet to 15,000 square feet.

[6] It is unnecessary to comment extensively on the petitioners' argument that G. L. c. 40A, § 5A, as in effect prior to St. 1975, c. 808, § 3, had the effect of merging lot 11 into lot 3 so as to make lot 11 unusable for separate construction. The judge reasoned in part that, even though lot 11 could not be built on, it might be capable of a separate legal existence. Assuming the petitioners' argument to be correct, it is obvious that the two lots have now been combined for all practical purposes and that in the future the combined parcel will contain a single residence. It does not follow, however, that the combined lot would not absorb all of the appurtenant rights originally possessed by lot 11. It is the combined parcel which is bounded by way X and which thereby has appurtenant rights in the length of the way. Consequently, the existence of the Mahoneys' easement is not solely dependent upon the status of lot 11 as a separate legal entity.

bined parcel over way X. See *Gaw* v. *Hughes,* 111 Mass. 296 (1873); *Hill* v. *Taylor,* 296 Mass. 107, 116 (1936); *Casella* v. *Sneierson,* 325 Mass. 85, 89 (1949); *Murphy* v. *Mart Realty of Brockton, Inc.,* 348 Mass. 675 677-678 (1965). The rights exist even if there are other ways, public or private, leading to the land (*New England Structural Co.* v. *Everett Distilling Co.,* 189 Mass. 145, 152 [1905]), and the rights are coextensive with the entire length of the way as actually laid out or as clearly indicated and prescribed. *Casella* v. *Sneierson, supra* at 89-90. This remains the case even if the way is not in existence, so long as it is sufficiently designated on a plan. The rights also apply even if the way under consideration is obstructed, overgrown, and impassable. *Murphy* v. *Mart Realty of Brockton, Inc., supra* at 677-678.

The application of these principles to the record before us and consideration of the relevant plans and the terms of the deeds together with the entire situation existing at the time of the conveyance and thereafter, including the physical condition of the area and the knowledge which the parties had or with which they were chargeable (*Murphy* v. *Donovan,* 4 Mass. App. Ct. 519, 527 [1976]), support the Mahoneys' rights to continue to use the entire length of way X. The fact as previously discussed that way X is clearly defined takes the circumstances out of the rule of those cases that limit the scope of this category of easement because the ways in question are indefinite, imprecisely designated or not otherwise described beyond the boundaries of the appurtenant land. See *Casella* v. *Sneierson, supra* at 86-88; *Walter Kassuba Realty Corp.* v. *Akeson, supra* at 725-726. The facts that lots 3 and 11 now exist (and will continue to exist) for all practical purposes as one parcel, and that the combined parcel derives from lot eleven's express appurtenant rights to use the westerly way reachable only through way X create a definite purpose for the existence of appurtenant rights in way X. The fact that the Mahoneys make sporadic use of way X demonstrates reliance on the rights. The fact that way X is in close proximity to the combined parcel, as

opposed to being a remote way, is also a factor supportive of rights in the easement. Compare *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. 350 (1926) (reference in a deed to a bounding street shown on a recorded plan does not as a matter of law give the grantee an easement in all the remote ways shown on the plan or prevent the grantor from making changes in the ways provided the changes are not inconsistent with the grantee's rights). In short, the judge sought to ascertain the intent of the parties at the time of the Mahoneys' conveyance in order to determine the purpose and effect of the reference to way X as a bounding way in their deed. *Bacon* v. *Onset Bay Grove Assn.*, 241 Mass. 417, 423 (1922). In this regard he considered all the circumstances including the possible uses for lot 11, the proximity of way X to that lot, the express rights granted in the westerly way, and the actual periodic use of way X by the Mahoneys. The judge's conclusions on this branch of the case are reasonable, are warranted by the evidence and are not tainted by legal error. As a consequence they must stand.

*Decision affirmed.*