NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1762                                      Appeals Court

   MELROSE FISH AND GAME CLUB, INC.  vs.  TENNESSEE GAS PIPELINE
                         COMPANY, LLC.


                        No. 14-P-1762.

     Middlesex.      November 17, 2015. - June 20, 2016.

            Present:  Cypher, Trainor, & Rubin, JJ.


Easement.  Real Property, Easement.  Estoppel.  Subdivision
     Control, Decision of planning board.  Practice, Civil,
     Injunctive relief.  Laches.



     Civil action commenced in the Superior Court Department on
April 23, 2013.

     The case was heard by Kimberly S. Budd, J., on motions for
summary judgment.


     Brian J. McNelis for the plaintiff.
     Dianne R. Phillips (Nathaniel F. Hulme with her) for the
defendant.


     RUBIN, J.  The plaintiff, Melrose Fish and Game Club, Inc.

(club), sued Tennessee Gas Pipeline Company, LLC (TGP) in

Superior Court for trespass because of TGP's alleged

interference with an easement[1] and breach of contract.  The suit
arises from TGP's construction, in 1998, of a natural gas
pipeline facility across the entire width of Cheever Avenue in
Saugus, a paper street over which the club claims an easement.

On cross motions for summary judgment, the Superior Court
judge allowed TGP's motion and denied the club's.  The judge
ruled, first, that the breach of contract claim was barred by
the six-year statute of limitations in G. L. c. 260, § 2;
second, that the club's easement over Cheever Avenue had been
extinguished before it filed suit, either by estoppel or by
frustration of purpose; and, third, that even if the easement
still existed, the club's request for injunctive relief would be
barred by laches.  The club appeals the second and third
rulings.  We reverse.

Background.  The club owns three lots of land in Saugus
near the Melrose border.  TGP owns a lot that shares a border
with one of the club's lots.  The land making up these four
lots, along with much of the surrounding land in Saugus, was
once owned by Wilbur F. Newhall.  In 1910, a plan subdividing

---

[1] The club captions count II of its complaint "trespass" and
seeks damages from TGP for a "continuing trespass."  The
Superior Court judge treated count II as stating a cause of
action for interference with an easement.  Cf. New England Box
Co. v. C & R Constr. Co., 313 Mass. 696, 707 (1943).  Since the
facts pleaded in the complaint put TGP on notice as to the
nature of the club's cause of action, this minor semantic
difference is of no moment.

Newhall's land into dozens of different lots was recorded at the registry of deeds (1910 plan). The 1910 plan shows Cheever Avenue bounding lots 76-80, amongst others, on their northeast sides. Up until around 1999, Cheever Avenue was entirely a paper street.[2]

In 1963, the club acquired lots 78-80 from Saugus (club lots), which had acquired the lots by tax takings between 1930 and 1951. The original deeds for those lots, as well as all subsequent deeds, describe them as being bounded by Cheever Avenue and as being numbered lots 78-80 on the 1910 plan. The tax takings describe the lots as located on Cheever Avenue.

In 1998, TGP built the natural gas facility (facility) at issue in this case. On March 9, 1998, TGP entered into a Right of Way Agreement (agreement) with the club. This agreement allowed TGP to use a small area in the northeast corner of lot 78 during construction and to build its facility over a portion of lot 78 and a portion of Cheever Avenue. This portion extended to the midline of the paper street. The agreement, along with a drawing, was recorded. The drawing indicates the location of "Cheever Street [sic]." TGP also exercised its power of eminent domain, pursuant to an order by the Federal

---

[2] A paper street is "a street shown on a plan but not built on the ground." Berg v. Lexington, 68 Mass. App. Ct. 569, 570 (2007).

Energy Regulatory Commission (FERC), to take a portion of lot 77, the lot immediately to the north of lot 78, which was then owned by the Birch Hill Realty Trust, also known as the Brentwood Estates Development Group (Brentwood Estates).[3] On July 21, 1998, the United States District Court for the District of Massachusetts issued an order granting TGP a perpetual easement and right of way over a portion of this lot. The order and an attached drawing were recorded. The drawing indicates the location of Cheever Avenue. TGP constructed its natural gas facility between July 21, 1998, and December 31, 1998.

Physically, the facility spans the entire width of Cheever Avenue and is located only partially on the easements and rights of way TGP had acquired by eminent domain and its agreement with the club. It is built on the section of Cheever Avenue that crosses lots 76 and 77[4] and a corner of the facility protrudes onto land that is or was owned by Saugus. This placement of the facility cuts off the portion of Cheever Avenue that fronts the club's lots from the portion that connects to a public way. There is no explanation in the record for the decision to build

---

[3] Lots 77 and 76 of the 1910 plan were later combined and adjusted to form lot 3 in the 1999 subdivision plan described infra. While it appears from the record that the taking occurred prior to the approval of the 1999 subdivision plan, the exact order is immaterial.

[4] Now lot 3, as described infra. See note 3, supra.

the facility where it is, nor of what contractual arrangements, if any, TGP had with Brentwood Estates or Saugus.

In 1999, the planning board of Saugus (planning board) approved a subdivision plan (1999 subdivision plan) submitted by Brentwood Estates. Under this plan, the northern portion of Cheever Avenue would be paved and the lots fronting it would be developed. The paved portion of Cheever Ave would terminate in a cul-de-sac just north of where the paper street borders the club's three lots.

One of the lots created by the 1999 subdivision plan was lot 3, formed out of lots 76 and 77, as described in the 1910 plan. As indicated above, this lot is situated just north of the club's lot 78. The deeds in the chain of title conveying lots 76 and 77 from Newhall to Brentwood Estates all refer to these lots by their numbers on the 1910 plan. In 2006, eight years after building its facility, TGP purchased lot 3 from Brentwood Estates. TGP's deed provides that it is "[s]ubject to and with the benefit of any and all easements . . . which are in force and applicable."

Discussion. 1. Standard of review. We review a summary judgment decision de novo. Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass. App. Ct. 515, 517 (2011). "Because the judge does not engage in fact finding in ruling on cross motions for summary judgment, we owe no deference to [her] assessment of the

record." Ibid. "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Caron v. Horace Mann Ins. Co., 466 Mass. 218, 221 (2013) (quotation omitted).

2. Existence of the easement. The judge found that the club possessed an easement by estoppel over the length of Cheever Avenue. We agree.

"[W]hen a grantor conveys land bounded on a street or way, he and those claiming under him are estoped to deny the existence of such street or way, and the right thus acquired by the grantee (an easement of way) is not only coextensive with the land conveyed, but embraces the entire length of the way, as it is then laid out or clearly indicated and prescribed." Lane v. Zoning Bd. of Appeals of Falmouth, 65 Mass. App. Ct. 434, 437 (2006), quoting from Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 677-678 (1965). "The estoppel of the grantor to deny the existence of the way 'applies as well to a contemplated way if clearly indicated as to an existing street.'" Casella v. Sneierson, 325 Mass. 85, 90 (1949), quoting from Ralph v. Clifford, 224 Mass. 58, 60 (1916). See Tufts v. Charlestown, 68 Mass. 271, 272-273 (1854); Murphy, supra at 678.

"This principle of estoppel 'seems to have become a rule of law rather than a mere canon of construction.'" Murphy, supra, quoting from Teal v. Jagielo, 327 Mass. 156, 158 (1951). "A way created by estoppel, of course, 'is not a way by necessity, and the right exists even if there be other ways either public or private leading to the land.'" Casella, supra at 91, quoting from New England Structural Co. v. Everett Distilling Co., 189 Mass. 145, 152 (1905).

TGP's reliance on Walter Kassuba Realty Corp. v. Akeson, 359 Mass. 725, 727 (1971), is misplaced. TGP argues that the Akeson case stands for the proposition that an easement by estoppel will extend only to portions of a way that are actually constructed or staked out.

Akeson, however, cannot be read so broadly. It holds that the question involved is whether the grantor intended to create an easement by implication. Id. at 728. This case is closer to Canton Highlands, Inc. v. Searle, 9 Mass. App. Ct. 48, 53-56 (1980), which distinguished Akeson, than to Akeson itself. As here, the court in Searle was required "to determine the purpose and effect of the reference to [a way] as a bounding way in [the respondents'] deed." Id. at 56. The court explained that "[b]ecause the [respondents'] parcel is now descriptively bounded by [the way], there have been created by rights of estoppel against their grantor and those claiming under that

grantor rights appurtenant to the combined parcel over [the way]. See Gaw v. Hughes, 111 Mass. 296 (1873); Hill v. Taylor, 296 Mass. 107, 116 (1936); Casella v. Sneierson, 325 Mass. 85, 89 (1949); Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 677-678 (1965). The rights exist even if there are other ways, public or private, leading to the land (New England Structural Co. v. Everett Distilling Co., 189 Mass. 145, 152 [1905]), and the rights are coextensive with the entire length of the way as actually laid out or as clearly indicated and prescribed. Casella v. Sneierson, supra at 89-90. This remains the case even if the way is not in existence, so long as it is sufficiently designated on a plan. The rights also apply even if the way under consideration is obstructed, overgrown, and impassable. Murphy v. Mart Realty of Brockton, Inc., supra at 677-678." Id. at 54-55. The court concluded that the way was adequately defined by the plan and that this fact distinguished the case from Akeson: "The fact . . . that [the way] is clearly defined takes the circumstances out of the rule of those cases that limit the scope of this category of easement because the ways in question are indefinite, imprecisely designated or not otherwise described beyond the boundaries of the appurtenant land. See Casella v. Sneierson, supra at 86-88; Walter Kassuba Realty Corp. v. Akeson, supra at 725-726." Id. at 55.

The same is true here.  Based on the undisputed facts in the summary judgment record, the judge found, "The Newhall deeds[5] describe the land comprising the club Lots as located on Cheever Avenue.  The Griswold deed[6] describes the land conveyed (which now comprises Lot 3) as 'lots . . . shown on the plan above referred to' — the Hawkes Plan.[7]  Although the paper street was not staked out, both the Newhall deeds and the Griswold deed adequately designate the street by reference to the Hawkes Plan.  See Murphy, 348 Mass. at 678 (1965); Olson v. Arruda, 328 Mass. 363, 365 (1952) (although no right of way was expressly created in the locus, one was created by reference to a plan showing the street at issue as a proposed street); Wellwood v. Havrah Mishna Anshi Sphard Cemetery Corp., 254 Mass. 350, 354 (1926) ('A plan referred to in a deed becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed.').  The Hawkes Plan clearly shows the club Lots as bounding on the proposed road, Cheever Avenue."

---

[5] These are the deeds for the three club lots that Newhall sold in February and May of 1911.  They referred to the club lots as being lots 78-80 on the 1910 plan.

[6] The deed for land sold by the executors of Newhall's estate in 1921.  The deed covered lots 74, 76, and 77 on the 1910 plan.

[7] The judge referred to the 1910 plan as the "Hawkes Plan" after its drafter.

TGP does not contest that the club's lots 78, 79, and 80 and TGP's lot 3 have a common grantor. The recorded deed and plans clearly indicate that the club lots abut Cheever Avenue. Though our decision does not turn on it, the negotiation of the agreement with the club demonstrates TGP's actual knowledge of the existence of Cheever Avenue and of the fact that it bounds the club lots. Thus, TGP is estopped from contesting the club's easement over Cheever Avenue.

3. Extinguishment of the easement. The judge concluded that the club's easement was extinguished either by estoppel or by frustration of purpose. On appeal, TGP abandons the first of these arguments.[8] Instead, it argues in its brief only that the

---

[8] This was a wise concession. "Estoppel is based on the policies of preventing the injustice and unjust enrichment that would result if servitude beneficiaries were able to mislead a burdened party into believing that the servitude will be modified or terminated and then to obtain an injunction or judgment for damages when the burdened party violates the servitude . . . . To prevail on a claim of estoppel based on silence, the defendants must prove that the silence of the owner of the dominant estate communicated an intention to modify or terminate the easement to the owner of the servient estate, which the latter reasonably relied on to its substantial detriment. Generally, silence reasonably may communicate such an intention only where the owner of the dominant estate knows that the owner of the servient estate intends to develop the servient property in a manner that is fundamentally inconsistent with the continued existence of the easement, and it is reasonably foreseeable that the servient estate owner will interpret the dominant estate owner's silence as assent and proceed with the inconsistent development to his detriment." Cater v. Bednarek, 462 Mass. 523, 531-532 (2012) (quoting from and adopting Restatement [Third] of Property [Servitudes] § 7.6 [2000]; citation omitted).

planning board's approval of the 1999 subdivision plan frustrated the purpose of the easement, and thereby extinguished it.

a. Extinguishment by frustration of purpose. TGP argues that the paving of a portion of Cheever Avenue has frustrated the purpose of the club's easement. We disagree.

"When a right in the nature of an easement is incapable of being exercised for the purpose for which it is created the right is considered to be extinguished." Comeau v. Manzelli, 344 Mass. 375, 381 (1962), quoting from Delconte v. Salloum, 336 Mass. 184, 190 (1957). In a classic example from an early case, an easement "of an open dock and common passageway for ships, boats and other waterborne craft" was extinguished by frustration of purpose where the city of Boston, acting pursuant to statute, constructed a street across the dock and filled up

---

The club did not mislead TGP into violating its easement. TGP constructed its natural gas facility in just five months. At the time construction started, the club could only know that TGP intended to build a facility that would be inconsistent with the continued existence of a small part of the easement, covering one-half of its width. The plan approved by the Federal District Court in the eminent domain proceeding on July 21, 1998, reflected the same intention. There is no evidence in the record that during the five months of construction the club became aware that TGP had decided to build its facility in a different place. The club's delay in asserting its rights after the construction of the facility is irrelevant to this analysis, as TGP has not pointed to any detrimental reliance on this postconstruction silence.

the dock between the street and the shore, creating land. Central Wharf & Wet Dock Corp. v. Proprietors of India Wharf, 123 Mass. 567, 569-570 (1878) (Gray, C.J.).  Nothing of the kind can be shown here.  One manifest purpose of the easement was to provide a right of way along Cheever Avenue out to a main street.  The approval of a plan to pave part of Cheever Avenue does not frustrate this purpose of the easement over the portion beyond the paving.  Plainly, paving one part of a paper street does not make it impossible to pave more of it later.

b.  Extinguishment by approval of the 1999 subdivision plan.  At oral argument, TGP advanced the distinct argument that the planning board's approval of the 1999 subdivision plan, which did not reflect the fact that Cheever Avenue continued as a paper road past the cul-de-sac, directly extinguished the club's easement, regardless of frustration of purpose.  Although this issue was waived, were we to reach it, we would disagree.

First, a municipality's decision to pave part of a paper street does not extinguish private easement rights in the rest of the paper street.  See Farnsworth v. Taylor, 75 Mass. 162, 168 (1857) ("The rights of the purchasers of house lots bounded by the streets laid out on this plan are something more than a dedication to the public, to be accepted or rejected at the discretion of the public authorities").  Thus, the planning board's approval of the 1999 subdivision plan did not, by

providing for paving part of Cheever Avenue, extinguish any easement rights over the rest of it.

Moreover, the planning board did not have the power to extinguish the club's easement by approving the 1999 subdivision plan. The Brentwood Estates subdivision plan was submitted and approved under the subdivision control law. See G. L. c. 41, § 81K. A planning board's approval of a subdivision plan under the subdivision control law cannot act as a taking, see G. L. c. 41, § 81DD, inserted by St. 1953, c. 674, § 7 ("The subdivision control law . . . shall not authorize the taking of land"), which would be the effect of the extinguishment of the club's easement. See Darman v. Dunderdale, 362 Mass. 633, 641 (1972). See also United States v. Certain Lands at Great Neck, in County of Nassau, State of N.Y., 49 F. Supp. 265, 266 (E.D.N.Y. 1943); Tax Lien Co. of N.Y. v. Schultze, 213 N.Y. 9, 12 (1914); Aust v. Marcello, 112 R.I. 381, 386 (1973).

Finally, the 1999 subdivision plan did not relate at all to the club lots. Therefore it is not in the chain of title to those lots. We do not think TPG's novel theory that easements may be extinguished in this way is consistent with the other rules relating to real property in a notice jurisdiction such as ours. See Emmons v. White, 58 Mass. App. Ct. 54, 63-68 (2003).

4. Injunctive relief. The judge ruled that the club was not entitled to injunctive relief for two reasons. First, the

judge ruled that the club's easement had been extinguished. Second, the judge ruled that the club had failed to enforce its easement rights in a timely manner. Since we hold that the club's easement was not extinguished, we must consider whether the club's plea for injunctive relief is barred by the doctrine of laches. We conclude that it is not.

"Generally, laches is a question of fact, Tzitzon Realty Co. v. Mustonen, 352 Mass. 648, 650 (1967), and a finding of fact by a Superior Court judge will not be overturned unless clearly erroneous." West Broadway Task Force v. Boston Hous. Authy., 414 Mass. 394, 400 (1993). However, the correct legal definition of laches and the proper factors for a judge to consider when applying it are issues of law, which we review de novo. U.S. Bank Natl. Assn. v. Schumacher, 467 Mass. 421, 427 (2014).

"The doctrine of laches operates in equity as an affirmative defense against a plaintiff whose unreasonable delay in bringing a claim results in some injury or prejudice to the defendant. Therefore, the [defendant] shoulders the burden of proving that the [plaintiff] waited for an unreasonably long period before asserting its rights . . . and that its delay induced a detrimental change in the [defendant's] position or injuriously affected the [defendant's] legal rights" (emphasis in original). West Broadway Task Force, supra at 400 (quotation

omitted).  "Laches is not mere delay but delay that works disadvantage to another."  Colony of Wellfleet, Inc. v. Harris, 71 Mass. App. Ct. 522, 531 (2008), quoting from Moseley v. Briggs Realty Co., 320 Mass. 278, 283 (1946).

The judge considered only the first element of laches, concluding that the club was not entitled to injunctive relief "because of its silence and failure to enforce its easement rights in a timely manner."  However, unless the unreasonable portion of the club's delay in bringing suit induced a detrimental change in TGP's position or injuriously affected TGP's legal rights, laches does not apply.

Considering all the elements of laches, TGP was not entitled to summary judgment on this ground, as there is nothing in the record that could support a finding of prejudice.  TGP's appellate brief does not explicitly identify a detrimental change in the its position or an injury to its legal rights that it claims resulted from the club's unreasonable delay.  Two possible sources of prejudice, the cost of building the natural gas facility and the cost of maintaining it, are not the result of any unreasonable delay by the club.  TGP constructed the facility in five months, at a time when the club had every reason to believe that the facility would block only half of Cheever Avenue.  Thereafter, TGP maintained the facility as a necessary part of its business operations.

TGP also argues that an injunction would be "inequitable . . . because of the public import of the natural gas facility" and because of what it calls TGP's "bona fide claim of right" based on its possession of the FERC order.  But of course, TGP did not use the eminent domain power granted in that order to obtain the right to build its facility in such a way that it blocks all of Cheever Avenue.

5.  <u>Statute of limitations</u>.  Finally the statute of limitations is no bar to this action.  Since the club continues to hold an easement over Cheever Avenue, the presence of TGP's facility blocking that easement constitutes a continuing trespass.  See <u>Porter</u> v. <u>Clarendon Natl. Ins. Co</u>., 76 Mass. App. Ct. 655, 659 (2010) ("When a trespass is caused by the erection of a permanent structure, that trespass commences on a date certain, and the trespass continues as long as the offending structure remains").  The failure to remove the structure "constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land."  Restatement (Second) of Torts § 161 comment b, at 289 (1965).[9]

---

[9] TGP has not argued that the requirements for adverse possession have been met.  See <u>Totman</u> v. <u>Malloy</u>, 431 Mass. 143, 145 (2000) ("A party claiming title to land through adverse possession must establish actual, open, exclusive, and nonpermissive use for a continuous period of twenty years").

6. <u>Conclusion</u>. The judgment is reversed and the case is remanded to the Superior Court for entry of judgment in favor of the club and a determination of the proper remedy.

<u>So ordered</u>.