Oak's Oil Service, Inc. *vs.* Massachusetts Bay
Transportation Authority & another.[1]

Essex.   October 7, 1982. — April 5, 1983.

Present: Hale, C.J., Grant, & Armstrong, JJ.

*Real Property*, Determinable fee, Reverter, Covenant running with the land. *Railroad*.

General Laws c. 184A, § 3, inserted by St. 1954, c. 641, allows a grantor of real estate to create, in a person other than himself, a right of entry for a condition broken, and permits the identity of that other person to be determined by subsequent events, including the grantor's assignment of the right of entry. [596-598]

In an action to remove a cloud on the plaintiff's title to a parcel of real estate, resulting from the exercise by the Massachusetts Bay Transportation.Authority, as successor to a railroad corporation, of a right of entry for condition broken, which the railroad, by a conveyance in 1956 to one of the plaintiff's predecessors in title, had reserved to itself "its successors and assigns," it was error for the judge to allow the plaintiff's motion for summary judgment based on the doctrine that the railroad's attempt to convey the right of entry to the authority had destroyed that right and thereby vested fee simple title in the holder of the estate theretofore defeasible by exercise of the right of entry, where the right of entry was governed by G. L. c. 184A, § 3, inserted by St. 1954, c. 641, and was, by its terms, capable of being assigned. [598-599]

At the trial of an action in which the owner of a parcel of land, on which a railroad station and vehicular parking area had been located, sought a declaration of its rights under a conveyance of the land by a railroad corporation to one of the plaintiff's predecessors in title, the judge was to consider the requirements of G. L. c. 160, § 128, respecting the duty of the railroad corporation and its grantees to maintain the station [599-601], as well as the effect of language in the conveyance appropriate for creating affirmative equitable obligations for maintenance of the station and parking area [601].

---

[1] Amoco Oil Company.

CIVIL ACTION commenced in the Superior Court Department on February 11, 1981.

The case was heard by *Bennett*, J., on motion for summary judgment.

*Esther R. Maletz* for the defendants.

*John S. Legasey* for the plaintiff.

ARMSTRONG, J. On January 3, 1956, the Boston and Maine Railroad (B&M), for $12,000 conveyed to one Heath Morse real estate adjoining its right of way in North Beverly, consisting of the North Beverly depot and the surrounding parking lot. The conveyance was stated to be "upon the express condition . . . that [Morse], his heirs and assigns, for a period of one hundred years from the date hereof, shall provide to the grantor, its successors and assigns, for the accommodation of and use by said grantor, its successors, assigns and patrons, suitable passenger facilities to accommodate a peak load of twenty (20) passengers in said station building . . . and parking facilities on said premises to accommodate thirty (30) automobiles of said grantor, its successors, assigns and patrons, and the right of ingress and egress at all times over said premises between [the street] and said buildings and the existing station platform situated upon remaining land of the grantor . . .," all "without charge to said grantor, its successors, assigns and patrons." The deed stated that the B&M, its successors and assigns should have a right of reentry upon breach of the condition, to be effected by filing a certificate of entry in the registry of deeds after first giving sixty days' notice of the breach to permit Morse, his heirs or assigns to bring the premises into compliance. The condition was to "terminate if and when the grantor abandons passenger service at this point."

On June 21, 1956, Morse conveyed the premises to the plaintiff, which in turn leased and later sold a portion of the premises to the defendant Amoco Oil Company.[2] In 1976

---

[2] The record indicates that before purchasing the property Amoco entered into an agreement with the B&M whereby the B&M released the property to be purchased by Amoco from the condition. The plaintiff denies that it consented to that arrangement and asserts that the release of

15 Mass. App. Ct. 593                                    595

Oak's Oil Service, Inc. v. Massachusetts Bay Transportation Authority.

the railroad made a conveyance by deed to the defendant Authority (MBTA), which the latter asserts included the B&M's reserved right of entry.[3] The MBTA "claims to be" the successor to the B&M.[4] On one or more occasions between July 26, 1977, and May 1, 1980, the MBTA sent notices to the plaintiff asserting that it was in breach of the condition in the deed. On November 4, 1980, the MBTA recorded a certificate of entry for condition broken and asserts now that by virtue of the reentry it holds in fee simple the entire parcel conveyed to Heath Morse in 1956. The plaintiff brought this action to remove the cloud on its title, joining Amoco Oil Company as a defendant.[5]

---

Amoco's portion makes it difficult or impossible for it, the plaintiff, now to comply with the condition. This aspect of the case is not further explicated in the record before us both because Amoco filed no answer and because the case went to summary judgment on a broader ground described in the text. The parcel conveyed by the railroad to Morse and by him to the plaintiff was 28,276 square feet; that conveyed by the plaintiff to Amoco was 16,232 square feet.

[3] Strangely, neither the seemingly critical deed nor the relevant language therefrom has found its way into the record. Without record reference (see Mass.R.A.P. 16[e], as amended, 378 Mass. 940 [1979]), the MBTA's brief quotes from the missing deed the passage which is apparently the source of its claim to hold the right of entry. There is some question whether the quoted language should be read as an attempt to convey the right of entry, referring as it does only to the railroad's "right, title and interest . . . in and to the [railroad's] right-of-way and other lands thereon [*sic*] and including all rights and easements appurtenant thereto . . . ." The traditional view is that a right of entry for condition broken is not appurtenant to the grantor's remaining estate (if any), but is rather "a right personal to him and his heirs or devisees." *Clapp* v. *Wilder*, 176 Mass. 332, 340 (1900). That view may be subject to reexamination in light of St. 1954, c. 641, § 3, discussed later in the text.

[4] The record contains neither the deed nor any description of the circumstances or the authority by which the MBTA may have become "successor" to the B&M; nor does the record indicate whether passenger service to North Beverly continues at the present time. For purposes of decision we assume that such service does continue, that it is furnished by the MBTA, and that abandonment of service has not been authorized by State and Federal regulatory agencies.

[5] But see note 11, *infra*.

The recitations above come from the pleadings and answers to interrogatories. Little else of consequence appears in the record (except for another portion of the deed from the B&M to Morse which is to be discussed later); but at this stage both parties moved for summary judgment, the MBTA relying, apparently, on the right of entry reserved in the deed and the plaintiff's tacit admission that the condition was not being observed,[6] and the plaintiff relying on a line of cases which hold that an attempt to alienate a right of entry by conveyance inter vivos has the effect of destroying the right of entry and of vesting fee simple title in the holder of the estate theretofore defeasible by the exercise of the right of entry. *Rice* v. *Boston & Worcester R.R.*, 12 Allen 141 (1866). *St. Paul's Church* v. *Attorney Gen.*, 164 Mass. 188, 198 (1895). *Dyer* v. *Siano*, 298 Mass. 537, 539 (1937). For other cases holding rights of entry nonassignable, see *Guild* v. *Richards*, 16 Gray 309, 318 (1860); *Brown* v. *Independent Baptist Church*, 325 Mass. 645, 647 (1950). The judge allowed the plaintiff's motion, citing *Rice* v. *Boston & Worcester R.R.*, *supra*, and judgment entered declaring the certificate of entry null and void. The case is before us on the appeal of the MBTA.

The conveyance by the B&M to Morse, which created the condition, was executed January 3, 1956. By its terms the condition was to last one hundred years. But in 1954 the Legislature enacted a statute relative to perpetuities, St. 1954, c. 641, the material provisions of which inserted G. L. c. 184A, §§ 1-3. Section 3 of c. 184A deals in part with estates in fee simple on condition subsequent, and provides in the first sentence that if a breach of the specified condition should not have occurred within thirty years from the time the estate becomes possessory, the fee shall become

---

[6] The record discloses only that the plaintiff claims that performance of the condition has been made onerous by the release of Amoco. The MBTA brief, straying beyond the record, asserts that when it took over the passenger service to North Beverly in December, 1976, the passenger depot was no longer in existence and the parking lot was barred by "no parking" signs.

absolute.[7]  Despite the intention of the parties, therefore, the right of entry would have expired if the condition had not been broken by 1986.[8]

Section 3 goes further.  The second sentence, only in part correlative with the first, provides that "[i]f such contingency occurs within said thirty years the succeeding interest, *which may be an interest in a person other than the person creating the interest or his heirs,* shall become possessory or the right of entry exercisable notwithstanding the rule against perpetuities" (emphasis supplied).  The purpose of the emphasized language, as explained by Professor W.B. Leach, one of the draftsmen, was to cure the disparity in treatment between, on the one hand, rights of entry and possibilities of reverter and, on the other, executory interests such as those created in *Institution for Sav.* v. *Roxbury Home for Aged Women,* 244 Mass. 583 (1923) ("To the Institution for Savings so long as it shall continue to exist, and then to the Old Ladies Home"), *First Universalist Soc.* v. *Boland,* 155 Mass. 171 (1892) ("[T]o [the society] so long as said real estate shall . . . be devoted to the uses, interests, and support of . . . Christian religion . . . then . . . [to] the following named persons . . . [and] their heirs"), and *Brown* v. *Independent Baptist Church,* 325 Mass. 645 (1950) ("[T]o the Independent Baptist Church of Woburn . . . so long as they . . . shall continue a Church . . . then . . . to my legatees hereinafter named").  Leach, "Perpetuities Legislation, Massachusetts Style", 67 Harv.L.Rev. 1349, 1364 (1954).  The new statute had the effect of validating executory interests of the type described, which would

---

[7] A law of greater vintage, G. L. c. 184, § 23, provides that a right of entry unlimited as to time by the instrument that created it shall expire in thirty years.  Section 23 does not apply to the B&M's reserved right of entry because the right is expressly limited to one hundred years.

[8] A third sentence of § 3, appearing in the original 1954 statute but later deleted by St. 1961, c. 448, § 2, exempted from the thirty-year limitation rights of entry so limited that the specified contingency must occur, if at all, within the period of the rule against perpetuities.  The B&M's reserved right of entry was not so limited and thus was subject to the thirty-year limitation imposed by the first sentence of § 3.

otherwise be held void under the rule against perpetuities, but limited them to thirty years' duration; while as to rights of entry and possibilities of reverter, traditionally held exempt from the application of the rule (*Proprietors of the Church in Brattle Square* v. *Grant*, 3 Gray 142, 148-152 [1855]; *Brown* v. *Independent Baptist Church*, 325 Mass. at 647-648), the new statute had the effect of limiting their possible duration, in effect leaving them indistinguishable in operation from executory interests created by analogous language.

The common law did not recognize the possibility of an estate on condition subsequent with a right of entry for condition broken reserved to a person other than the grantor or his heirs. *Proprietors of the Church in Brattle Square* v. *Grant*, 3 Gray at 146; *Stockbridge Iron Co.* v. *Cone Iron Works*, 102 Mass. 80, 84 (1869). Restatement of Property § 24 comment d, and § 45 comment q (1936).[9] We construe the statute as authorizing the creation of a right of entry for condition broken in a person other than the grantor.[10] Acceptance of that proposition leaves no reason in logic why

---

[9] An attempt to create a right of entry in a person other than the grantor or his heirs was either regarded as void (see the first argument made in *Whitney* v. *Union Ry.*, 11 Gray 359, 360 [1858]) or was construed as creating some form of executory limitation of the shifting type in the named person, see Restatement of Property § 46 comment j, subject to different treatment with respect to assignability and the application of the rule against perpetuities, and lacking, apparently, the distinctive volitional character of a right of entry. *Id.*, § 45 comment q. See also Moynihan, Introduction to the Law of Real Property 197 (1962). Compare 2A Powell, Real Property § 272, at 458-459 (1981). Neither author cites a case in which a transferor has clearly attempted to create a right of entry in a stranger, and we here found none. Contrast *United States* v. *16 Acres of Land in Hyannis*, 47 F.Supp. 603 (D. Mass. 1942), in which a devise of land to the town "for park purposes . . . . Should the same . . . be used . . . for other than park purposes . . . the same to revert to [A and B]" was apparently treated as creating an estate on condition subsequent in the town. That construction, however, is probably not reconcilable with the Restatement's § 45 comment q, illustration 14, or with the other authorities cited.

[10] The sentence in question is susceptible to another reading, one in which the words "which may be an interest in a person other than the per-

the identity of that other person may not be determined by subsequent events, as, for example, by assignment of the grantor. While, as Professor Leach pointed out, the new "statute does not *in terms* deal with the question of alienability of [rights of entry for condition broken]" (emphasis supplied), 67 Harv. L. Rev. at 1364, by removing the underlying common law disability on the creation of rights of entry in persons other than the grantor and his heirs it destroys the basis for the rule of nonalienability. Under the new statute, if it is clear from the language of the deed and the attendant circumstances that the parties intended to create a right of entry in a person other than the grantor or to provide for the right of entry to be assignable with a conveyance of the grantor's remaining land, there is no reason not to give effect to that intention.

Here the parties to the 1956 conveyance made their intention clear. The right of entry was not to be personal to the

---

son creating the interest or his heirs" would apply only to the interest following a fee simple determinable and not to the interest (i.e., the right of entry) following a fee simple on condition subsequent. Such a reading might leave the quoted words without practical effect, because our law seems long to have recognized that a person other than the grantor or his heirs may be granted the estate following a fee simple determinable. See, e.g., *First Universalist Soc.* v. *Boland*, 155 Mass. 171, 174-175 (1892); *Institution for Sav.* v. *Roxbury Home for Aged Women*, 244 Mass. 583, 585-586 (1923). We think that the preferable reading is that the words "succeeding interest," which are broad enough to encompass possibilities of reverter, executory interests, and rights of entry, are intended to cover all such interests, and that the words "or the right of entry exercisable" merely reflect a recognition that the words "shall become possessory" are not apt when the succeeding interest does not become possessory until an entry is made. That reading seems more consistent with Professor Leach's purpose to replace the myriad common law pitfalls that harassed certain future interests in haphazard fashion in favor of a simplified regime that gives effect to the intention of the transferor for a thirty-year period and then cuts off outstanding future interests in favor of the societal interest in free alienability. Leach, Perpetuities Legislation Massachusetts Style, 67 Harv. L. Rev. 1349, 1364 (1954) ("Since the present statute limits all of these future interests to 30 years . . . there is no reason to discriminate against interests in third persons. Therefore, if the contingency happens within the required period, the succeeding interest goes exactly where the grantor or testator intended, not necessarily back to his heirs").

grantor. Rather, "in the event of a breach of [the condition], then the grantor, its successors and assigns shall have the right, but not the obligation, to enter upon any portion or all of the premises hereby conveyed . . . and upon such entry . . . the premises shall revert to and become the property of the grantor, its successors or assigns . . . ." It follows that the right of entry was capable of being assigned, and thus there must be a trial to determine whether the right was assigned (see note 3, *supra*), whether the release to Amoco impaired the enforceability of the right of entry (see note 2, *supra*), whether the condition has been broken, and whether passenger service was at any time "abandoned" so as to terminate the condition.

It would not resolve the controversy, however, even if it should be determined that the condition has terminated and the right of entry has been lost. The complaint seeks "a declaration setting forth the nature of the obligation of the plaintiff and defendant, Amoco Oil Co., under the deed from the B&M Railroad to . . . Morse." The condition is not the only possible source of obligation. General Laws c. 160, § 128, requires that a "railroad corporation which has established and maintained a passenger station throughout the year for five consecutive years at any point upon its railroad shall not abandon such station . . . except with the written approval of the [Department of Public Utilities] after notice . . . ." If the North Beverly depot fell within that statute, the real estate conveyed to Morse would be subject to a servitude imposed by law, for the B&M obviously could not evade the statute by the expedient of transferring the depot to one who was not under the obligation imposed on "railroad corporation[s]." The requirement of law was presumptively known to both seller and buyer; and while they could between themselves allocate the burden of maintaining the station, each enters into such an arrangement knowing that the railroad may be required to maintain the station if the obligation imposed by the statute is not met. *Department of Pub. Util.* v. *Trustees of Properties of N.Y., N.H. & H.R.R.*, 304 Mass. 664 (1939). In

light of the statutory obligation the parties' private agreement could not wholly divest the railroad of any right to use the property for passenger station purposes, and that right would constitute a servitude in the conveyed property in the nature of reserved easement. Such an easement could, of course, be passed on to a successor, including the MBTA, even if the latter, as a public authority, might not itself be subject to the mandate of G. L. c. 160, § 128.

Apart from the statute, the deed from the B&M to Morse used language apt for the creation of an easement of the type at issue in *Bronson* v. *Coffin*, 108 Mass. 175, 184, 187 (1871), and discussed in *Norcross* v. *James*, 140 Mass. 188, 190 (1885), an easement consisting in part of affirmative obligations borne by the owner of the servient tenement, now usually termed a covenant that runs with the land. The deed was signed by Morse as well as by a representative of the B&M, and stated that "by the acceptance of this Deed, the grantee hereby acknowledges that the foregoing restrictions, exceptions, conditions, covenants and agreements are part consideration therefor, and that he and his heirs, executors, administrators and assigns, will be bound by said restrictions, exceptions, conditions, covenants and agreements in the same manner as if he had conveyed such rights to said Boston & Maine Railroad." There can be no doubt that the obligations thus imposed on Morse and his successors in title with respect to the maintenance of the depot and its adjacent parking facilities were intended for the benefit of the B&M's remaining railroad lands (which apparently included the track and an adjacent passenger platform) and as such could run as an appurtenance to those lands (see *Whitney* v. *Union Ry.*, 11 Gray 359, 365 [1858]; contrast *Norcross* v. *James*, *supra* at 191-193), although the easement or covenant, to the extent that its source lay in the private agreement of the parties rather than in the statute, would be limited in duration to one hundred years from January, 1956.

For all these reasons the judgment must be reversed and the case remanded for further proceedings consistent here-

with, and ultimately for the entry of a judgment declaring all of the rights and obligations of each of the parties, including Amoco Oil Company,[11] with respect to the provision and maintenance of passenger facilities in North Beverly.[12]

*So ordered.*

---

[11] The docket entries indicate no return of service on the defendant Amoco Oil Company, which is at least a necessary party to this litigation, if not an indispensable party. See Mass.R.Civ.P. 19(a)(2) and (b), 365 Mass. 765 (1974).

[12] In proceedings to date the MBTA seems to have directed its efforts solely to establishing the validity of its certificate of entry and the efficacy of the entry to vest fee simple title in it. Bearing in mind the compulsory counterclaim provisions of Mass.R.Civ.P. 13(a), as amended, 385 Mass. 1215 (1982), the Authority, representing in this matter the rights and convenience of the public (see *Newton* v. *Department of Pub. Util.*, 339 Mass. 535, 548 [1959]), should focus as well on the possible lesser rights in the nature of easements to have the property employed for passenger station purposes, whether the right of entry has or has not been lost.