LEE E. ESTES & another[1] *vs.* JOHN E. DEMELLO & another,[2] individually and as trustees.[3]

No. 03-P-793.

Plymouth. May 3, 2004. - August 18, 2004.

Present: CYPHER, DOERFER, & GREEN, JJ.

*Way*, Private. *Easement. Real Property*, Deed, Easement, Grant. *Estoppel.*

In a civil action seeking a declaration that the defendants held no rights in a way crossing the plaintiffs' property, as shown in a 1971 plan of subdivision, which way had never been constructed in the manner depicted on the plan, the judge erred in granting summary judgment in favor of the plaintiffs, where the language of limitation in the applicable deed from the original grantor to the defendants, which the judge construed as imposing a condition on the creation of the defendants' rights in the way, appeared instead merely to disclaim any obligation on the part of the grantor (the plaintiffs' predecessor in interest) to construct the way [641-643]; moreover, where the grantor conveyed land bound on the unconstructed way, he and his successors (including the plaintiffs) were estopped to deny the existence of the way [643-645].

CIVIL ACTION commenced in the Superior Court Department on May 30, 1997.

The case was heard by *Paul E. Troy*, J., on a motion for summary judgment.

*Donald H. Barnes, Jr.*, for the defendants.

*Michelle A. McHale* (*Donald J. Fleming* with her) for the plaintiffs.

GREEN, J. The defendants appeal from a summary judgment of the Superior Court, declaring that they hold no rights in a way crossing the plaintiffs' property, as shown on a 1971 plan of subdivision. The way was never constructed on the ground in

---

[1]Jennifer R. Estes.

[2]Margaret M. DeMello.

[3]Of the DeMello Family Trust.

the manner depicted on the plan, a circumstance the motion judge concluded defeated the rights the defendants claim. We reverse.

*Facts.* The undisputed facts may be summarized as follows, with reference to the sketch plan attached to this opinion as an appendix for assistance in understanding the configuration and spatial relationships of the various parcels.

The DeMellos own property, on which their residence is located, consisting of four contiguous lots in Mattapoisett. They acquired the property under two separate deeds. The first deed, from Alfred E. Faria and Elizabeth F. Faria and dated October 17, 1963, conveyed the largest lot, with its frontage on the northerly side of Acushnet Road (an improved and regularly traveled public way). The second deed, from Alfred E. Faria (Elizabeth having died), was dated January 20, 1972, and conveyed the three smaller lots. The lots conveyed under the 1972 deed had no frontage on Acushnet Road, but were contiguous to the northern boundary of the lot conveyed under the 1963 deed.

The 1972 deed described the land conveyed thereunder as "[b]eginning at a point . . . in the westerly sideline of a proposed way known as Stevens Street as shown on a plan hereinafter described." That plan is a 1971 plan, endorsed as "approval not required" under the subdivision control law, see G. L. c. 41, § 81P, that reconfigured and divided into three lots the lot formerly shown as lot 52 on a subdivision plan of land approved by the Mattapoisett planning board in 1964, and duly recorded with the registry of deeds.[4] Lot 52A comprised the northeastern portion of former lot 52, and lot 52C comprised the southeastern portion of lot 52; lot 52A relied on Steven Street for the frontage required for endorsement of the plan as "approval not required."[5] The 1971 plan was recorded with the 1972 deed.

---

[4] The plan depicts the way as "Steven Street," rather than "Stevens Street" as described in the deed. The parties place no significance on the difference, nor do we.

[5] A division of land into multiple lots does not require approval under the subdivision control law if each resulting lot has sufficient frontage along a suitable way. See G. L. c. 41, §§ 81L, 81P. The purpose of § 81P "was to alleviate the 'difficulty . . . encountered by registers of deeds in deciding

The 1972 deed also contained the following language with reference to Steven Street:

> "Subject to the condition that the grantee is aware that 'Stevens Street' is a proposed way and is not in existence and the grantor undertakes noobligation [*sic*] or makes no representations or warranty that said street will be constructed or that he will begin construction on said street, or that any utilities will be installed in said street, grantor reserves title to said way subject to the grantee's right to use said way in common with others for ingress and egress to the granted premises. And grantor reserves the right to grant easements in common over said way to others or to grant easements to any utility company or to the Town for municipal services over, under or across said way."

In 1986, Faria conveyed to James B. Lanagan, III, approximately 5.2 acres of land, consisting (according to the deed) of "Steven Street, part of Joseph Street and Lots 23, 24, 27, 30, 33, 36, 39, 42, 45, 48, 50, and 53" on the subdivision plan approved by the Mattapoisett planning board in 1964. Though, as noted, the 1986 deed referred to Steven Street by reference to the 1964 plan, it did not state that the conveyance was subject to any rights of way held by other parties in Steven Street. By comparison, the 1986 deed expressly stated that it was subject to two easements held by New Bedford Gas & Edison Light Company.

In May of 1991, Lanagan's development trust gained approval of a subdivision plan which, of relevance to the parties' dispute, shortened the way formerly shown as Steven Street to a

---

whether a plan showing ways and lots could lawfully be recorded.' " *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 602 (1980), quoting from 1953 House Doc. No. 2249, at 55. The 1971 plan contained a notation that lot 52A was "to be incorporated with Lot 49," that lot 52C was "to be incorporated with" the lot previously conveyed to the defendants under the 1963 deed, and that lot 52B, which comprised a strip of land eighteen feet wide along the western border of the former lot 52, was "to be incorporated with Lot 51," which was contiguous to lot 52B and had frontage on Acushnet Road along its western boundary. Similarly, by its "incorporation with" the land previously conveyed to the DeMellos, lot 52C enjoyed the benefit of that lot's frontage on Acushnet Road along its southern boundary. Neither lot 49 nor lot 52A had frontage on any way other than Steven Street.

cul-de-sac ending 201.67 feet from its intersection with Acushnet Road. That distance is 135.59 feet less than the combined frontage of the DeMellos' property along Steven Street as shown on the 1964 and 1971 plans. The 1991 plan (which referred to the reconfigured way as "Faria's Field Road") created a new "lot 1" served by the way, and included a portion of the former Steven Street within the lot's boundaries. In October of 1991, Lanagan's development trust conveyed to Fairhaven Savings Bank, by deed in lieu of foreclosure, lot 1 and Faria's Field Road.[6] The plaintiffs acquired lot 1 and Faria's Field Road from Citizens Bank of Massachusetts (as successor to Fairhaven Savings Bank) by deed dated April 27, 1992.[7] Faria's Field Road has since been renamed Brook Trout Lane.

*Discussion.* The motion judge considered whether the DeMellos held an easement either by express grant or by estoppel. On the question of express grant, the judge concluded that the easement granted to the DeMellos under the 1972 deed was subject to a condition subsequent, unlimited in time and uncertain of satisfaction, and was therefore void under the rule against perpetuities.[8] On the question of estoppel, the judge observed that, though the 1972 deed described the land conveyed thereunder as bounded by Steven Street and by reference to the plan showing it, (i) the earlier 1963 deed to the DeMellos included no reference to the way; (ii) subsequent deeds conveying land which included Steven Street did not describe the land as bounded by the way; (iii) Steven Street was never staked out or constructed on the ground; and (iv) the DeMellos have alternative access to their land by means of Acushnet Road. We address each question in turn.[9]

a. *Express grant.* "The basic principle governing the

─────

[6]The deed included certain other property, not relevant for our purposes.

[7]Like the 1986 deed to Lanagan, both the 1991 deed in lieu of foreclosure and the 1992 deed to the plaintiffs stated that the property was subject to two easements to New Bedford Gas & Edison Light Company and, though referring by name and by reference to the plan creating Faria's Field Road, did not expressly state that the property was subject to rights of any other party in Faria's Field Road or the former Steven Street.

[8]Under the view expressed by the motion judge, the easement would not arise unless and until the grantor constructed the way.

[9]Though, as illustrated below, the requirements for an easement by estoppel are quite clearly satisfied by the facts of this case, we discuss the somewhat

interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances." *Sheftel* v. *Lebel*, 44 Mass. App. Ct. 175, 179 (1998). In addition, "[i]t is a rule in the construction of deeds, that the language, being the language of the grantor, is to be construed most strongly against him." *Bernard* v. *Nantucket Boys' Club, Inc.*, 391 Mass. 823, 827 (1984), quoting from *Thayer* v. *Payne*, 2 Cush. 327, 331 (1848).

The language of limitation the motion judge construed as imposing a condition on the creation of the DeMellos' rights in the way appears instead merely to disclaim any obligation on the part of the grantor to construct the way. Nothing in the deed purports to limit any use the grantees might make of the way, or states that their rights of ingress and egress (to which the grantor's reservation of the fee was expressly subject)[10] would not arise unless or until the way was built. Similarly, nothing in the deed limited the right of the DeMellos to improve the way themselves, if they chose to do so; the right to use a private way ordinarily "includes the right to make reasonable repairs and improvements." *Hodgkins* v. *Bianchini*, 323 Mass. 169, 173 (1948). See *Stagman* v. *Kyhos*, 19 Mass. App. Ct. 590, 593-594 (1985).

The effect of the unnecessarily narrow interpretation of the easement grant is exacerbated by the application of the rule against perpetuities to void it. The principles governing interpretation of a deed are similar to those governing contract interpretation. In the case of the latter, "[a]n interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable." *Jacobs* v. *United States Fid. & Guar. Co.*, 417

more involved question whether the 1972 deed created a valid easement by express grant because of the possibility (which the parties do not raise and we do not resolve) that certain rights might attach to an easement by express grant which would be unavailable to the holder of an easement by estoppel. For example, no case has squarely addressed whether an abutter to a private way holding rights of ingress and egress by estoppel holds such rights "by deed" within the meaning of G. L. c. 187, § 5. See *Cumbie* v. *Goldsmith*, 387 Mass. 409, 410 n.5 (1982); *Nylander* v. *Potter*, 423 Mass. 158, 160 n.6 (1996).

[10]Had Faria not expressly reserved the fee in the way, portions of it would have passed to the DeMellos under G. L. c. 183, § 58.

Mass. 75, 77 (1994), quoting from *Sherman* v. *Employers' Liab. Assurance Corp.*, 343 Mass. 354, 357 (1961). See *Talbot* v. *Rednalloh Co.*, 283 Mass. 225, 230 (1933); *Finn* v. *McNeil*, 23 Mass. App. Ct. 367, 372 (1987). Particularly where, as illustrated above, a construction of the grant that triggers application of the rule against perpetuities is unnecessary, a construction giving effect to the grant and avoiding its invalidation is to be favored.[11]

b. *Estoppel.* "[W]hen a grantor conveys land bounded on a street or way, he and those claiming under him are estopped to deny the existence of such street or way, and the right thus acquired by the grantee (an easement of way) is not only coextensive with the land conveyed, but embraces the entire length of the way, as it is then laid out or clearly indicated and prescribed." *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass. 675, 677-678 (1965), quoting from *Casella* v. *Sneierson*, 325 Mass. 85, 89 (1949). Similarly, "where land situated on a street is conveyed according to a recorded plan on which the street is shown, the grantor and those claiming under him are estopped to deny the existence of the street for the entire distance as shown on the plan." *Goldstein* v. *Beal*, 317 Mass. 750, 755 (1945) (citations omitted). "This rule is applicable even if the way is not yet in existence, so long as it is contemplated and sufficiently designated." *Murphy* v. *Mart Realty of Brockton, Inc.*, *supra* at 678. "The rights also apply even if the way under

---

[11]Even if the easement grant were subject to a condition subsequent, it is unclear why we should not consider the condition satisfied by the later construction of the renamed, and shortened, Faria's Field Road, at least as to the portion of the way actually constructed. Nothing in the terms of the condition suggests that it would not be satisfied by construction of the way under a different name, by a person other than Faria, or for only a portion of its proposed length — at least for so much of the way as actually constructed. The statutory modifications to the common law rule against perpetuities adopted under St. 1954, c. 641, and St. 1989, c. 668, "had the effect of validating executory interests of the type described, which would otherwise be held void under the rule against perpetuities, but limited them to thirty years' duration." *Oak's Oil Serv., Inc.* v. *Massachusetts Bay Transp. Authy.*, 15 Mass. App. Ct. 593, 597-598 (1983) (discussing provisions of former G. L. c. 184A, § 3, now contained in G. L. c. 184A, § 7). Accordingly, the fact that it was possible at the time of the grant that its condition might never be satisfied does not invalidate the grant ab initio, and the interest conditionally granted would vest if the condition were satisfied within thirty years.

consideration is obstructed, overgrown, and impassable." *Canton Highlands, Inc.* v. *Searle*, 9 Mass. App. Ct. 48, 55 (1980).

In concluding that the DeMellos do not hold rights in Steven Street under an easement by estoppel, the motion judge observed that the 1986 deed from Faria to Lanagan did not describe the land conveyed thereunder as bounded by Steven Street, and that the 1963 deed from the Farias to the DeMellos did not refer to Steven Street at all. However, the easement at issue arose for the benefit of the land conveyed under the 1972 deed, so the language of the 1963 deed, concerning other land, is irrelevant; moreover, the subdivision plan which laid out Steven Street was not submitted to the Mattapoisett planning board for approval until 1964. As to the effect of the 1986 deed from Faria to Lanagan, Faria and his grantees (including Lanagan and the plaintiffs as his successors in interest) were estopped to deny the existence of the way from and after the 1972 deed. In any event, at least part of the reason the 1986 deed did not describe the land as bounded by the way is that the land conveyed thereunder included the fee of the way; the 1986 deed did refer to Steven Street by name and by reference to the subdivision plan delineating its precise layout.

The case for estoppel is perhaps even more pronounced in the present case than in the usual circumstances, since Faria relied on Steven Street to provide the frontage required for endorsement of the 1971 plan as "approval not required." Though the 1971 plan noted that lot 52C was to be combined with the adjacent DeMello property (and could thereby rely on its frontage), and lot 52B was to be combined with the Faria lot situated to its west (which also had frontage), lot 49 (with which lot 52A was to be combined) had no frontage on any way other than Steven Street. Accordingly, the plan dividing lot 52A from the larger lot 52 was eligible for endorsement as "approval not required" only by reliance on the frontage furnished to the combined lots 49 and 52A by Steven Street, "a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law." G. L. c. 41, § 81L, twelfth par., cl. (*b*). The very plan delineating the boundaries of the land Faria conveyed to the DeMellos under the 1972 deed relied on Steven Street to meet the legal requirements applic-

able to recording both the deed and the plan on which it was based. See G. L. c. 41, § 81X. See also *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 603 (1980).

As illustrated by such cases as *Murphy, supra*, and *Canton Highlands, supra*, it is of no consequence that Steven Street was not built or staked out on the ground at the time of the 1972 deed. *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. 350 (1926), and *Walter Kassuba Realty Corp.* v. *Akeson*, 359 Mass. 725 (1971), cited by the motion judge as resting on that distinction, involved rights claimed in unimproved ways shown on a recorded plan as extending beyond the plaintiffs' land and leading to no other improved or traveled way. See *Wellwood, supra* at 355; *Kassuba, supra* at 728. By comparison, the way in the present case leads directly from the land conveyed under the 1972 deed to the nearest public way, and is the only means to reach the public way from such land without traversing the DeMellos' other land, on which they previously had developed their house and yard. Moreover, insofar as the DeMellos' rights depend on a determination of the intent of the parties, the circumstances bearing on intent are strikingly similar to those considered in *Scagel* v. *Jones*, 355 Mass. 208, 210 (1969) (way arose by implication over strip abutting granted premises, even though not designated as way on plan referred to in deed).

*Conclusion.* The judgment of the Superior Court is reversed. A new judgment shall enter, declaring that the DeMellos have an easement for ingress and egress over the way shown as Steven Street on the 1971 plan, including so much of the improved way now called Brook Trout Lane as is within the limits of Steven Street.

*So ordered.*