NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-828                                    Appeals Court

DON PERRY vs. ADA NEMIRA & another.[1]


No. 15-P-828.

Suffolk.     October 5, 2016. - January 30, 2017.

Present:  Meade, Milkey, & Kinder, JJ.


Easement.  Real Property, Easement, Deed, Adverse possession.
    Way, Private.


Civil action commenced in the Land Court Department on December 21, 2011.

The case was heard by Alexander H. Sands, III, J.


Andrew S. Lee (Kenneth D. Wacks & Michelle A. McHale also present) for the defendants.
Don Perry, pro se.


MEADE, J.  The plaintiff, Don Perry, and the defendants,

Tomas and Ada Nemira,[2] own partially abutting properties known as

9B Maple Lane and 12 Maple Lane, respectively, located in a

_____

    [1] Tomas Nemira.

    [2] For ease we refer to the Nemiras together, although the property at issue is held only in Tomas's name.

densely developed residential area of Hull. When the Nemiras fenced off what they believed to be part of their property, controversy arose regarding the parties' rights in and over three right of ways (ROW) abutting or in the vicinity of the parties' properties and leading to the public way, formerly known as Center Hill Avenue. Perry commenced this action claiming that (i) the fence blocks his right of ways, (ii) he and his predecessors have incorporated a portion of what have been called ROW 1 and ROW 3 into his front yard, and any rights the Nemiras had in those portions of ROWs 1 and 3 have been extinguished by adverse possession, (iii) he has acquired a prescriptive easement to turn around and park on certain sections of the Nemira property, and (iv) certain boundary lines in the deed description to the Nemira property and on a site plan dated November 24, 2010, are wrong. Perry sought an order to restrain the Nemiras from maintaining a fence on any portion of the disputed ROWs or any portion of Perry's property.

For their part, the Nemiras denied that Perry has acquired any prescriptive rights to use their property or block ROWs 1 and 3. They also denied that their fence blocked Perry's right of way, and in counterclaims, they contended that Perry has no vehicular right of way over ROW 3 or if he did, it has been extinguished by nonuse.

Following a trial, preceded by a view, the judge drafted a careful and detailed decision determining the rights of the parties.  The parties' deeded rights over the ROWs became a primary issue at trial and the judge explored that issue in detail in his decision.  The judge specifically noted that the parties did not claim and he did not consider prescriptive rights over the ROWs, other than Perry's claim that he has extinguished the Nemiras' rights over portions of ROWs 1 and 3 by adverse possession.  Perry appeals from so much of the decision that determines he has failed to show that he has acquired certain property by adverse possession, he has no right to park on or turn around on the Nemira property, and he has only utility rights and no access rights in ROW 3, as well as from the judge's adoption of a 1911 plan.  The Nemiras appeal from the determinations that they have no deeded right to pass and repass by vehicle over ROWs 1 and 3 and that if they did, their right has been partially extinguished by Perry's adverse possession.  They also appeal from the conclusion that their right to pass over ROW 2 does not include a utility easement.

Our review of the record reveals no error in the judge's determinations that Perry (i) has acquired a portion of ROW 1 and the southern terminus of ROW 3 by adverse possession, and (ii) has failed to prove he has acquired a prescriptive easement to park on or turn around on the Nemiras' property.  Those

determinations were based on credibility determinations of conflicting evidence and a view of the area involved and its topography, and have not been shown to be clearly erroneous.  We write only to clarify the parties' deeded easement rights, and other errors discussed below.

1.  Background.  We briefly describe the properties and ROWs at issue.  The Nemira property and part of the Perry property are shown on a plan dated August, 1911, and recorded in the Plymouth registry of deeds in plan book 1, page 761 (the 1911 plan).  The 1911 plan depicts six lots and a single public way, Center Hill Avenue, which runs in a north/south direction along the eastern boundary of the property shown on the plan. George Hall owned all six lots when he commissioned the plan in 1911.  The public way abuts only lots 5 and 6.  What consistently have been referred to as ROW 1 and ROW 3 in this litigation run perpendicular to each other and form an "L" on the plan.  ROW 1 is shown as a twelve-foot ROW, beginning at an intersection with the public way between lots 5 and 6 and proceeding westerly 266 feet, forming the horizontal part of the L.  Proceeding from the west, the northerly bound of ROW 1 consecutively abuts the southern bound of lots 5, 4, and 3.  The southerly bound of ROW 1 abuts the northern bound of lot 6 and shows a one-foot strip between its southern bound and the northern bound of land of others, a portion of which is now

owned by Perry.  As ROW 1 proceeds west, it ends at its intersection with ROW 3, at the southeasterly corner of lot 2. ROW 3, the vertical part of the L, is shown as running from south to north and is comprised of five feet from lot 3's western boundary and five feet from lot 2's eastern boundary. It is apparent from viewing the 1911 plan that lots 2 and 3 would be landlocked without a right of way over ROWs 1 and 3 and lot 4 would be landlocked without a right of way over ROW 1.

ROW 2 was first created in a 1941 deed when lot 3 was divided into northern and southern sections, lots 3A and 3B, respectively.  It is described in the deed as running from west to southeast over the northerly section of lot 3B and then southerly along lot 3B's eastern border to ROW 1.  The deed grants lot 3A an express access easement over ROW 2.  The deed conveys lot 3A with reference to the 1911 plan and a plan recorded on September 20, 1941 (the 1941 plan), which shows lot 3A bound by ROW 3, labeled as "Right of Way," and a "Tarred Way" in the same location as the described west to southeast portion of ROW 2.

The Nemiras own lot 2 and the northern part of lot 3 on the 1911 plan.  Perry owns the southern portion of lot 3, including ROW 2.  Perry also owns lot 9B, which is located across from ROW 1 to the south and derives from property formerly owned by Franklin Croffut.  Access to the lots today is over a single

ROW, known as Maple Lane, which the judge concluded is ROW 1 as shown on the 1911 plan. Entering from the east, it turns at the eastern boundary of lot 3B and continues along the approximate location of ROW 2. The judge found that the portion of ROW 1 that continues west of the intersection with ROW 2 has a four-foot ledge drop and is blocked with a tree, along with a wall constructed by Perry.

The version of the original Croffut deed transferring property that includes Perry's lot 9B contained in the record is indecipherable. There appears to be no dispute, however, that the Croffut deed and subsequent deeds describe a twelve-foot way abutting lot 9B to the north, referred to as "North Croffut Way." The parties stipulated that the original Croffut deed grants Hall's predecessor the right to use the passageways bordering on the Croffut property. This includes North Croffut Way.

2. Discussion. a. ROW 1 and North Croffut Way. Before we turn to the language of deeds purporting to grant easements over ROWs 1, 2, and 3, we first address Perry's argument that the judge erred in adopting the 1911 plan because the lots shown extend as much as twenty feet farther south than the metes and bounds description in the originating deeds into George Hall. Perry contends this is clearly shown on a 1940 Land Court plan registering land adjacent to Perry's lot 9B and means that Hall

did not own the land on which he laid out ROW 1 and upon which he granted easements.

The judge found that the passageway that became ROW 1 and North Croffut Way were separate ways and, over the years, "have been confused with each other, and were likely assumed to represent the same right of way." He concluded that North Croffut Way has been incorporated into the northern twelve feet of lot 9B and its eastern abutters. Maple Lane, the judge concluded, is largely in the location depicted as ROW 1 on the 1911 plan, except that to the east of the parties' properties it has shifted south onto lot 6 on the 1911 plan.

From our review of the record, it appears that there at least is overlap of what is shown as ROW 1 on the 1911 plan and North Croffut Way. It may well be that Hall incorporated North Croffut Way into ROW 1. The judge was not asked to determine the fee in ROW 1, however, and the record, in any event, is inadequate to resolve that issue. At a minimum, we would need to have the Land Court records on the registration of lot 9, to the east of Perry's lot 9B. We conclude we need not dwell on this issue, however, because even if ROW 1 overlaps with North Croffut Way, the original Croffut deed gave the owner of the property depicted on the 1911 plan an easement over the passageways abutting the Croffut parcel, including North Croffut Way. Even if he improperly included some or all of North

Croffut Way in the 1911 plan as portions of lots 3 and 4, which we need not decide, Hall had easement rights over it for the benefit of all of his land and was free to grant easements over ROW 1 as depicted on the 1911 plan to the properties shown on the 1911 plan. On this record, there is no merit to Perry's argument that the easements granted over ROWs 1 and 3 are invalid.

b. Easements over ROWs 1 and 3. We review the judge's determination regarding the existence of an easement in private ways under a "clearly erroneous" standard. Boudreau v. Coleman, 29 Mass. App. Ct. 621, 623 n.4 (1990). The burden is on the party seeking to prove an easement. Id. at 629.

We accept, without deciding, the judge's conclusion that any preexisting easements over ROWs 1 and 3 had merged when all the property on the 1911 plan came into the common ownership of George Hall. See Williams Bros. Inc. of Marshfield v. Peck, 81 Mass. App. Ct. 682, 684-685 (2012). Thus, if an easement over ROWs 1 and 3 were to become appurtenant to the six lots depicted on the 1911 plan, they needed to be revived by Hall.

Each of the lots was conveyed both with reference to the 1911 plan and by a metes and bounds description. In addition, contrary to the judge's determination, we conclude that, as Perry argues, the deed to lot 3 included an express general

right of way over both ROW 3 and ROW 1.[3]  When lot 3 was divided into the northern section, lot 3A, now owned by the Nemiras, and the southern section, lot 3B, now owned by Perry, the easements over ROWs 1 and 3 remained appurtenant to lots 3A and 3B. Unless otherwise stated in the deed, "rights and appurtenant easements pass by grant without specific mention."  Cheever v. Graves, 32 Mass. App. Ct. 601, 606 (1992).  See G. L. c. 183, § 15.  Thus, even though easements over ROWs 1 and 3 were not specifically mentioned when lot 3A was separated from lot 3B, the easements remained appurtenant to both lots.  Rice v. Vineyard Grove Co., 270 Mass. 81, 86 (1930) (easement appurtenant to whole lot and to any part into which it was later subdivided unless some additional burden would thereby be placed on servient estate).  There is no argument that the easements would be overburdened by access from lots 3A and 3B.

The deed to lot 2, which we set out in note 4, infra, is not as precise.[4]  The judge interpreted it as providing a utility

---

[3] Lots 3, 4, and 6 were conveyed by the same deed; the deed expressly provides that the lots are conveyed "[t]ogether with the benefit of and subject to all rights of all persons entitled to use" ROW 1 to the public way and over ROW 3, both as shown on the 1911 plan.  The deed separately reserves an access easement for the grantor and provides that the premises are conveyed with the benefit of and subject to a utility easement over ROWs 1 and 3.

[4] Lot 2 is described as "a certain parcel of land, with the buildings thereon," "being Lot 2 on [the 1911 Plan]," followed by a metes and bounds description.  The deed to lot 2 describes

easement only over ROWs 1 and 3 and no right of access over them for lot 2, effectively rendering lot 2 landlocked. To be sure, the language is awkward. The phrases "with the benefit of and subject to the rights" in ROWs 3 and 1 "from said lot 2 to Centre Hill Avenue, as shown on [the 1911 plan]," are consistent with the general easement the grantor had reserved in the previous sentence. The grantor did not expressly reserve a utility easement. Thus, not only does the interpretation of the deed as providing only a utility easement landlock lot 2, it also means that the grantor made the conveyance subject to a utility easement that was not reserved and failed to make it subject to the general easement that was reserved. With no known entity reserving a utility easement, the words "subject to" are superfluous.

The general principle governing the interpretation of deeds is that the intent of the parties is "ascertained from the words used in the written instrument interpreted in the light of all

---

the easterly bound as lot 3 but further provides that "[a]s much of the easterly boundary of said parcel as is included in a ten foot passageway as shown on said plan, is conveyed, subject to the rights of all persons entitled to use the same as part of said passageway and with the reservation to the grantor, and his heirs, . . . to use the same as part of said passageway in common with others entitled to rights therein. And said parcel is conveyed with the benefit of and subject to the rights in said passageway ten feet wide [ROW 3], and in a passageway twelve feet wide from said Lot 2 to Centre Hill Avenue [ROW 1], as shown on said plan, for the purpose of drainage, laying wires water pipes, sewers or gas pipes [utility easement]."

the attendant facts."  Hickey v. Pathways Assn., Inc., 472 Mass. 735, 744 (2015), quoting from Suburban Land Co. v. Billerica, 314 Mass. 184, 189 (1943).  Given that lot 2 was conveyed with "buildings thereon," which the grantor and grantee presumably intended the grantee to reach, and with reference to the 1911 plan which clearly identifies right of ways to the public way, it seems quite likely that the grantor intended to insert an "and" before the "for the purpose" of installing utilities language when conferring easement rights over ROWs 3 and 1.  We note that the judge determined that when the grantor transferred lot 1 and granted a utility-only easement over its western border, the grantor expressly noted that the easement was "not for use as a passageway."  Significantly, no such notation was made here.  Moreover, a utility easement is utterly useless to the owner of lot 2 if the lot is landlocked.  In addition, all of the other lots were conveyed with a right of way to the public way.  Finally, it would be anomalous to conclude that the grantor intended to reserve an access easement over lot 2's portion of ROW 3 for the grantor but intended no access easement for lot 2 itself.  For all of these reasons, we think the express language of the deed to lot 2, read in light of the attending circumstances, may reasonably be interpreted as conferring an express access easement over ROWs 1 and 3 along with a utility easement.

Even if lot 2 does not benefit from an express access easement over ROWs 1 and 3, however, we conclude it enjoys an easement by implication from the deed's reference to the 1911 plan, which shows the right of ways leading to the public way. "A plan referred to in a deed becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed." Reagan v. Brissey, 446 Mass. 452, 458 (2006) (quotation omitted). While it is true that "where land is conveyed with reference to a plan, an easement other than an easement of necessity is created only if clearly so intended by the parties to the deed," here the necessity of an access easement is readily apparent from review of the plan and the judge's finding that the lot would be landlocked without a right of way over ROWs 1 and 3. Scagel v. Jones, 355 Mass. 208, 211 (1969) (quotation omitted) ("need of access to the interior house lots shows the clear intention of the parties that the strip be used for that purpose"). See Canton Highlands, Inc. v. Searle, 9 Mass. App. Ct. 48, 53-56 (1980); Estes v. DeMello, 61 Mass. App. Ct. 638, 645 (2004). See also Dubinsky v. Cama, 261 Mass. 47, 55 (1927) (when plan is of small parcel laying out nine lots without numerous streets laid out upon it, right of ways over passageways shown on the plan are manifest and there is no need to examine presumed intention of parties).

Even if it were necessary to examine the intent of the parties as determined by considering all the circumstances in which the deed was made, however, all of the evidence here demonstrates the clear intention that the ways shown on the 1911 plan leading to lot 2 be used for access.  "[A] conveyance of land that renders the grantor's remaining land landlocked ordinarily gives rise to an easement by necessity, based on the presumed intention of the grantor to retain access to his remaining land."  Adams v. Planning Bd. of Westwood, 64 Mass. App. Ct. 383, 390 (2005).  The judge placed great weight on the maxim "expressio unius est exclusio alterius" (to express or include one thing implies the exclusion of the other), in concluding that the express inclusion of a utility easement meant that the omission of an access easement was intentional. See Kitras v. Aquinnah, 474 Mass. 132, 143 (2016).  In Kitras, however, there were no ways shown on the plan referred to in deeds to the grantees and there was a custom in place where easements over all of the property shown on the plan were understood to exist for the Native American grantees.  The facts here are markedly different.  Absent an easement over ROWs 1 and 3, lot 2 and the buildings thereon would be inaccessible, despite passageways clearly shown on the plan leading to the six lots from the public way.  Given that all other factors support an easement by necessity, we conclude that the absence of an

express right of way was the result of careless drafting rather than the intent of the parties.

Although we conclude that Perry has deeded access and utility easements over ROWs 1 and 3 benefiting his lot 3B, and that the Nemiras have deeded access and utility easements over ROWs 1 and 3 for the benefit of lots 2 and 3A, the judge determined that Perry has extinguished by adverse possession the Nemiras' rights over a portion of ROW 1 between lot 3B and 9B and ROW 3 where it intersects with ROW 1. There was testimony credited by the judge that for well over twenty years, these areas have been incorporated into the front yard of Perry's property and trees and topography made that portion of ROW 1 impassable. Having based his conclusion on credibility determinations of conflicting evidence and a view, we cannot say the judge erred. ROW 1 has been extinguished, however, only over the portion of the way that has been blocked. It has not been extinguished over the portion of ROW 1 which intersects with ROW 2 and leads to the public way. Similarly, the right of way over most of ROW 3 has not been extinguished; only its southern end has been extinguished.

c. Easements over ROW 2. It is uncontested that lot 3A enjoys an easement over ROW 2. The right of way over ROW 1 remained appurtenant to lot 3A when lot 3 was divided. Thus, lot 3A is accessible from the public way. Lot 2 does not enjoy

an express easement over ROW 2.  It would appear that for well over twenty years, ROW 1 to the point where it joins with ROW 2 and Row 2 have been used to access all of the Nemira property, particularly lot 2 on which a house had been situated for many years.  Perry concedes in his brief that the Nemiras have an easement over ROW 2 to reach their land and does not appear to limit it to lot 3A.

Perry argues that any easement over ROW 2 for the benefit of the Nemira property is for access only and that they enjoy no utility easement over ROW 2 because the ROW is not shown on a recorded plan.  General Laws c. 187, § 5, as amended by St. 1988, c. 334, § 6, provides that "owners of real estate abutting on a private way who have by deed existing rights of ingress and egress upon such way or other private ways shall have the right by implication to place, install or construct in, on, along, under and upon said private way or other private ways pipes, conduits, manholes and other appurtenances necessary for the transmission of gas, electricity, telephone, water and sewer."  We have held that the statute applies to easements, even driveway easements.  Barlow v. Chongris & Sons, Inc., 38 Mass. App. Ct. 297, 299 (1995).  The statute contains no requirement that a private way be shown on a recorded plan in order for § 5

to apply.[5]  We conclude, therefore, that the Nemiras' easement over ROW 2 for the benefit of lot 3A includes a utility easement pursuant to G. L. c. 187, § 5.

As discussed, Perry's lot 3B has an easement over ROWs 1 and 3.  ROW 2 is entirely on his property and as owner of the servient estate, he is entitled to make such use of his property that is not inconsistent with or does not materially interfere with the easement.  Western Mass. Elec. Co. v. Sambo's of Mass., Inc., 8 Mass. App. Ct. 815, 818 (1979).[6]  The judge correctly concluded that any fencing recently installed by the Nemiras which blocks ROWs 2 or 3 must be removed.

3.  Conclusion.  To summarize, we reverse so much of the judgment that orders that (i) North Croffut Way is a separate right of way from ROW 1 as the record is insufficient to draw that conclusion; (ii) the Nemiras have no deeded right to use ROW 1 for access for the benefit of lot 2 or 3A; (iii) Perry's right to use the portion of ROW 1 east of lot 3B for the benefit of lot 3B is limited to utilities only; (iv) neither party has any deeded right to use ROW 1 east of lot 3B for access; (v) the Nemiras' right to use ROW 2 for the benefit of lot 3A is for

_____

[5] To the extent a recorded plan is required, at least a portion of ROW 2 is shown on a plan recorded with and referred to in the deed that created ROW 2.

[6] Perry does not argue on appeal that he has rights over ROW 1 or ROW 3 to benefit lot 9B.  The argument is therefore waived.

access only and does not include utilities; and (vi) the Nemiras' right to use the portion of ROW 3 located on lot 3B is for utilities only.  In all other regards, the judgment is affirmed.  The matter is remanded for the entry of a revised judgment with new orders consistent with this opinion.

<u>So ordered</u>.